The STATE of Texas, Petitioner,

v.

Earl Bruce ROLAND, Respondent.

No. 97–0941.

Supreme Court of Texas.

Aug. 25, 1998.

Dan Morales, Austin, David M. Curl, Fort Worth, for petitioner.

David Andrew Pearson, IV, Fort Worth, for respondent.

PER CURIAM.

We grant Roland's motion to correct judgment. We withdraw our opinion dated May 8, 1998, and substitute the following in its place.

Does either due process or Texas Code of Criminal Procedure article 46.03, section 4(d)(5) require the release of a person who was involuntarily committed following an ac-

quittal by reason of insanity when the trial court failed to hold a hearing before his commitment order expired? The court of appeals held that due process requires release. It therefore reversed the trial court's renewal commitment order and ordered the immediate release of Earl Bruce Roland. 951 S.W.2d 169. We hold that, although a timely hearing is mandatory, neither due process nor section 4(d)(5) demands release just because a hearing is delayed. Therefore, we reverse the judgment of the court of appeals and remand to the court of appeals for consideration of Roland's remaining points of error.

In February of 1984, Roland poured gasoline on his stepfather, set him on fire, and stabbed him in the back with a butcher's knife. Over the next ten years, Roland was repeatedly found incompetent to stand trial. In February of 1994, the trial judge found Roland not guilty of attempted murder by reason of insanity.[1] He was automatically committed to Vernon State Hospital for a thirty-day evaluation under Texas Code of Criminal Procedure article 46.03, section 4(d)(1), (2). In response to the district attorney's application for extended mental health services under Texas Health and Safety Code section 574.035, a jury found Roland mentally ill and dangerous. On June 16, 1994, he was committed to Vernon State Hospital for one year. On June 13, 1995, the trial court renewed Roland's commitment for an additional year. On July 31, 1996, forty-seven days after this order expired, the trial court issued another renewal order. Roland made no objection in the trial court that this renewal violated Texas Code of Criminal Procedure article 46.03, section 4(d)(5). However, his attorney filed a letter written by Roland with the court of appeals, which the court construed to be a notice of appeal. The court of appeals held that the trial court's failure to hold the hearing before the commitment order expired required Roland's immediate release. We disagree.

■ It is not a denial of due process for the government to involuntarily commit someone indefinitely following an insanity acquittal as long as procedures exist for periodic review. *See Jones v. United States*, 463 U.S. 354, 368, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983); *see also* 18 U.S.C. § 4243 (providing for indefinite hospitalization of those found not guilty by reason of insanity); *Foucha v. Louisiana*, 504 U.S. 71, 77, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992) (authorizing confinement when the person is both dangerous and mentally ill). Because Texas Health and Safety Code section 574.068 provides the procedures for Roland to seek release, there is no substantive due process violation. *Jones*, 463 U.S. at 368, 103 S.Ct. 3043; TEX. HEALTH & SAFETY CODE § 574.068. Therefore, the only issue in this case is whether the State complied with its own statute, which could implicate procedural due process guarantees.

Article 46.03, section 4(d)(5) provides two options upon the expiration of a commitment order. The trial court can either order discharge or hold a hearing to determine whether commitment should be continued, modified, or terminated. TEX.CRIM. PROC.CODE art. 46.03, § 4(d)(5). The hearing is optional. But if the trial court chooses to hold one, it must be held "prior to the expiration of the commitment order." TEX.CRIM. PROC.CODE art. 46.03, § 4(d)(5). We note, though, that the statute does not prescribe the consequences of a failure to hold a timely hearing. There is a difference between finding that the statute's procedural timeline is mandatory and determining the consequences of the failure to comply with the deadlines. *See State v. $435,000*, 842 S.W.2d 642, 644 (Tex. 1992).

■ Nothing in article 46.03, section 4(d)(5) justifies denying the State an opportunity to prove that Roland continues to be dangerous and mentally ill once the statutory time for hearing has passed. We should not invent a remedy that the Legislature itself could have, but did not, specify. *See Hines v. Hash*, 843 S.W.2d 464, 467 (Tex.1992) (noting that the Legislature may prescribe the consequences for failure to comply with statutory requirements); *see also United States*

---

1. By 1984, Roland already had an extensive history of hospitalization and a lengthy criminal record. Furthermore, in 1980, Roland had been found not guilty of attempted capital murder by reason of insanity.

*v. Montalvo–Murillo,* 495 U.S. 711, 721, 110 S.Ct. 2072, 109 L.Ed.2d 720 (1990) (refusing to "invent a remedy to satisfy some perceived need to coerce the courts and the Government into complying with the statutory time limits"); *RepublicBank Dallas, N.A. v. Interkal, Inc.,* 691 S.W.2d 605, 607 (Tex. 1985) ("Courts must take statutes as they find them.... They should search out carefully the intendment of a statute, giving full effect to all of its terms. But they must find its intent in its language and not elsewhere.... They are not responsible for omissions in legislation." (quoting *Simmons v. Arnim,* 110 Tex. 309, 220 S.W. 66, 70 (1920))).

The Legislature clearly intended for the judiciary to be involved in the decision to terminate the commitment of a person found not guilty of a violent offense by reason of insanity. Section (4)(d)(5), entitled "Judicial Release," states that discharge may only occur *"by order of the committing court* in accordance with the procedures specified in this subsection." TEX.CRIM. PROC.CODE art. 46.03, § 4(d)(5) (emphasis added). To infer automatic release because of the court's delay, without the benefit of judicial oversight, and when the individual's detention should continue, would defeat this legislative intent.

The concern motivating the judicial release requirement—protecting the public from a dangerous and mentally unstable individual—is far too important to ignore due to a failure to observe statutory time limits, especially when the State is otherwise able to show that Roland should not be released. *See Montalvo–Murillo,* 495 U.S. at 720, 110 S.Ct. 2072; *Brock v. Pierce County,* 476 U.S. 253, 260, 106 S.Ct. 1834, 90 L.Ed.2d 248 (1986) (articulating the "great principle of public policy, applicable to all governments alike, which forbids that the public interests should be prejudiced by the negligence of the officers or agents to whose care they are confided" (quoting *United States v. Nashville, C. & St. L. Ry. Co.,* 118 U.S. 120, 125, 6 S.Ct. 1006, 30 L.Ed. 81 (1886))). The mandatory provision affords the parties the right to compel the trial court to hear the case promptly; it does not dictate dismissal. *See Montalvo–Murillo,* 495 U.S. at 717, 110 S.Ct.

2072 ("There is no presumption or general rule that for every duty imposed upon the court or the [State] and its prosecutors there must exist some corollary punitive sanction for departures or omissions, even if negligent.").

Under Rule 59.1 of the Texas Rules of Appellate Procedure, we grant the State's petition and, without hearing oral argument, we reverse the judgment of the court of appeals and remand to the court of appeals for consideration of Roland's remaining points of error.