Deanna **LANEY**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 12–06–00170–CV.

Court of Appeals of Texas, Tyler.

April 11, 2007.

Beth L. Mitchell, for appellant.

Michael J. West, for appellee.

Panel consisted of WORTHEN, C.J., GRIFFITH, J., and HOYLE, J.

## OPINION

JAMES T. WORTHEN, Chief Justice.

Deanna Laney was committed to the Texas Department of Mental Health and Mental Retardation for inpatient care after she was found not guilty by reason of insanity of capital murder. She appeals from the trial court's order that the Department may not grant her passes to leave the facility. In four issues, Appellant argues that the Department is given statutory authority to grant passes, that the trial court's order violates the separation of powers and due course of law provisions of the Texas Constitution, and that the evidence is insufficient to support the order. We affirm.

### BACKGROUND

In 2003, Appellant killed two of her children and seriously injured another. She was indicted for capital murder, and a jury trial was held in 2004. The jury found Appellant not guilty by reason of insanity. Following the verdict, the trial court retained jurisdiction over Appellant and held a hearing on the matter of Appellant's commitment to the Texas Department of Mental Health and Mental Retardation (Department). The trial court found that Appellant had committed acts that involved serious bodily injury and that she met the criteria for commitment. Accordingly, the trial court ordered that Appellant be committed to a maximum security facility operated by the Department. Later, and in accordance with state law, Appellant was transferred to a less restrictive facility. As required by law, the trial

court reviewed the commitment annually and recommitted Appellant in July 2004, July 2005, and July 2006.[1]

After the July 2005 recommitment, the State learned that the Department had granted Appellant passes to leave the grounds of the facility, including passes that allowed her to go shopping with her parents on brief excursions that were not supervised by hospital staff.[2] The State filed a motion asking the trial court to hold a hearing on the propriety of the passes. The trial court held a two day hearing and concluded that state law did not allow the Department to grant passes to Appellant. The trial court issued a written clarification order in May 2006 memorializing that ruling. Appellant appeals from this order.[3]

## JURISDICTION

Although not raised by the parties, it is incumbent on us to determine whether we have jurisdiction of this appeal. *See Campbell v. State*, 85 S.W.3d 176, 180 (Tex.2002). Two jurisdictional questions are presented. The first is whether this appeal is moot because the 2005 commitment order, which the trial court clarified, has expired by its own terms and been replaced with a subsequent order that does not contain the same clarification. The second, which Appellant addresses in her second issue, is whether the trial court had jurisdiction to construe the relevant statutes.

### This Court's Jurisdiction

■ Under Article V, Section 8 of the Texas Constitution, the "judicial power does not embrace the giving of advisory opinions." *General Land Office v. OXY U.S.A., Inc.*, 789 S.W.2d 569, 570 (Tex. 1990). Commonly called the mootness doctrine, an appeal is moot, and we must dismiss it, if no case or controversy continues to exist. *Id.* at 570–71.

1. The July 2006 order was not in the appellate record, but we requested and obtained a copy of it. *See* Tex.R.App. P. 34.5(c)(1). At oral argument the parties agreed that the trial court recommitted Appellant in 2006.

2. The Health and Safety Code gives the Department the authority to release some patients on passes or furloughs. *See* Tex. Health & Safety Code Ann. § 547.082 (Vernon 2006) (reprinted below).

   Section 547.082   Pass or Furlough From Inpatient Care
   (a) The facility administrator may permit a patient admitted to the facility under an order for temporary or extended inpatient mental health services to leave the facility under a pass or furlough.
   (b) A pass authorizes the patient to leave the facility for not more than 72 hours. A furlough authorizes the patient to leave for a longer period.
   (c) The pass or furlough may be subject to specified conditions.
   (d) When a patient is furloughed, the facility administrator shall notify the court that issued the commitment order.

3. With its brief, the State included appendices that contain images and a transcript of testimony, all of which the State submits came from the record of the underlying criminal trial held in this matter. Appellant filed a motion to strike the appendices, and the State responded. We do not doubt the State's assertion of the documents' provenance, and we recognize that the trial court took judicial notice of the criminal trial. But these documents are not part of the appellate record, and the State never requested that they be made a part of the appellate record. The appellate record may be supplemented by this court, the trial court, or any party by a request to the official court reporter. Tex.R.App. P. 34.6(d). Appendices may be filed with briefs and may contain portions of the record. Tex.R.App. P. 38.2(j)(2). However, we do not interpret this rule to allow a party to supplement the record by including documents in an appendix absent an agreement of the parties. *See Gilmer Indep. Sch. Dist. v. Dorfman*, 156 S.W.3d 586, 588 (Tex.App.-Tyler 2003, no pet.); *Yarbrough v. State*, 57 S.W.3d 611, 616 (Tex.App.-Texarkana 2001, pet. ref'd). Therefore, we grant Appellant's motion to strike the appendices and do not consider them.

The clarification order is no longer in effect, strictly speaking, because it clarified the 2005 commitment order and that commitment order has expired. There is an exception to the mootness doctrine for judicial actions, like commitment orders, that impose a collateral consequence that persists beyond the order itself. *See Johnstone v. State,* 22 S.W.3d 408, 409 n. 1 (Tex.2000) (per curiam). But the trial court's clarification order, like a commitment following an acquittal for reason of insanity, imposes no collateral consequence. *See Jones v. United States,* 463 U.S. 354, 367 n. 16, 103 S.Ct. 3043, 3051 n. 16, 77 L.Ed.2d 694 (1983) ("A criminal defendant who successfully raises the insanity defense necessarily is stigmatized by the verdict itself, and thus the commitment causes little additional harm in this respect."). There is also an exception to the mootness doctrine for questions that are "capable of repetition yet evading review." *See State v. Lodge,* 608 S.W.2d 910, 912 (Tex.1980). This case has been expeditiously heard and briefed, both at the trial court and on appeal, but briefing in this matter had not been completed when the July 2006 commitment order was entered. However, even if the clarification order came too close in time to the annual recommitment hearing to allow for appellate review, Appellant still could have appealed the July 2006 commitment order. Disposition of that appeal could have been expedited. Therefore, this issue is not so time sensitive that it would continually evade review.

We conclude, however, that this matter is not moot for the same reason that Appellant did not appeal from the July 2006 order. The Department's lawyer testified that the Department would follow the decision made by the trial court on this question, and the Department agreed prior to the hearing to refrain from issuing additional passes until the trial court ruled. We accept this to mean that the Department will continue to construe the statute as the trial court ordered. Therefore, a live controversy exists, and we have jurisdiction, because the trial court's construction of the statute continues to control this aspect of Appellant's commitment.

### The Trial Court's Jurisdiction

With respect to the jurisdiction of the trial court, there is a conflict, Appellant asserts, between the jurisdiction of the trial court and the Department, an administrative agency. The Department had construed the relevant statutes to allow off campus passes and by extension, furloughs, to patients such as Appellant who have been found not guilty by reason of insanity and committed pursuant to Texas Code of Criminal Procedure, article 46.03.[4] The trial court held a hearing on the matter and concluded, as a matter of law, that the statute did not allow the Department to grant passes to Appellant, an Article 46.03 acquittee.

Appellant argues that the trial court's order inappropriately encroaches on an area in which the Department exercises discretionary authority. We think it is

---

4. For the sake of brevity, we refer to a person who has been found not guilty by reason of insanity and subsequently committed by the procedure found at article 46.03, Texas Code of Criminal Procedure, as an "Article 46.03 acquittee." We will refer to the commitment procedure generally as an "Article 46.03 commitment." Article 46.03 was repealed for

prospective application in 2005. Act of September 1, 2005, 79th Leg., R.S., ch. 831, §§ 1, 5, 2005 Tex. Gen. Laws 2841, 2841, 2854. Article 46.03 is continued in effect for this case, and we have reprinted it in the appendix to this opinion. Our citations are to Article 46.03 as it appears in the appendix rather than to the session laws.

something less than that, however. Appellant is correct that the Texas Constitution provides that one branch of government may not exercise the functions "properly attached to either one of the others" and that the Mental Health Code gives the Department the authority to authorize passes for certain committed persons. *See* Tex. Const. art. II, § 1; Tex. Health & Safety Code Ann. § 547.082 (Vernon 2006).[5] But the trial court did not seek to review or curtail the Department's discretionary decision to allow Appellant to leave the facility on a pass. Instead, it was the trial court's judgment that Appellant was ineligible as a matter of law for such passes because section 547.082 did not apply to her.

In the broadest sense, the trial court has jurisdiction over Appellant. Because Appellant was found not guilty by reason of insanity and was committed pursuant to Article 46.03, the trial court has jurisdiction over her for a period of time equal to the maximum term of imprisonment for which she could have been sentenced had she been found guilty. Tex.Code Crim. Proc. Ann. art. 46.03, §§ 4(d)(1), (7). The charged offense was capital murder. Therefore, the trial court retains jurisdiction over Appellant for her "life." *See* Tex. Penal Code Ann. § 12.31(a) (Punishment for capital murder where the State does not seek the death penalty is life imprison-

ment.). That jurisdiction specifically includes the authority to commit a person who has been found not guilty by reason of insanity, to make a finding as to whether the act committed by the person involved serious bodily injury to another person, to determine whether the person should be moved from inpatient care to outpatient care, and to determine if the person should be discharged. *See* Tex.Code Crim. Proc. Ann. art. 46.03, §§ 4(d)(3), (1), (4), (5).

The treatment for mental illness is delegated to the Department, and the Department has developed rules to implement that requirement. *See* Tex. Health & Safety Code Ann. § 571.006; *see generally* Tex. Admin. Code Title 25, Part 1 (West 2006).[6] By statute, the Department is given authority to provide care to committed individuals and to make the decision whether to place the individual in a maximum security facility or a less secure facility. Tex. Health & Safety Code Ann. § 576.022; Tex.Code Crim. Proc. Ann. art. 46.03, § 4(b).

There is the potential for jurisdictional overlap on the question of passes and furloughs. The relevant statute provides that the facility administrator may permit a patient to leave the facility under a pass or furlough. *See* Tex. Health & Safety Code Ann. § 574.082(a). Citing Article 46.03, subsection 4(d)(3), Texas Code of Criminal

---

5. Sections 571.001 through 578.008, Texas Health and Safety Code, are designated as the Texas Mental Health Code. *See* Tex. Health & Safety Code Ann. § 571.001 (Vernon 2006); *Campbell,* 85 S.W.3d at 177 n. 1. In this opinion we refer to these sections as the Mental Health Code, but cite to the current version of the Health and Safety Code.

6. The Department has written rules allowing patients to leave the facility on what is called "absence for trial placement." *See* 25 Tex. Admin. Code § 412.206 (West 2006). According to the administrative rules, an absence for trial placement is a "type of furlough" and is

only available for patients who are eligible for discharge. 25 Tex. Admin. Code §§ 412.153(2), 412.206 (West 2006). Appellant was not eligible for discharge at the time of the passes because she had recently been committed for a twelve month period. Therefore, she was not eligible for an absence for trial placement. *See also* 25 Tex. Admin. Code § 412.202(f)(2) ("A person acquitted by reason of insanity and committed to a [State Mental Health Facility] under TCCP, Article 46.03, may be discharged only upon order of the committing court in accordance with TCCP, Article 46.03, § 4(d)(5).").

Procedure, the State argues that the trial court is given authority to direct a patient to participate in a prescribed regimen of medical, psychiatric, or psychological care. Accordingly, the State concludes, the trial court has power to regulate the granting of passes and furloughs. But this is not the relevant inquiry here. The trial court did not seek to direct Appellant's course of treatment or to review discretionary decisions made by her treatment team. The trial court simply construed a statute.

■ The relevant inquiry is whose construction of the statute should prevail. The powers of the Department are established by statute. *See* TEX. HEALTH & SAFE-TY CODE ANN. § 571.006. Within the decisions delegated to the Department are the discretionary decisions to grant passes and furloughs and to release patients. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 574.082, 574.085, 574.086. The interpretation of statutes may be part of the process, but the decision to give a pass or furlough is made primarily on the basis of the medical and clinical judgments of the Department's employees. The trial court's decision that section 574.082 did not apply to an Article 46.03 acquittee was strictly a matter of statutory construction. Construction of statutes is principally a judicial function. *See City of Round Rock v. Smith,* 687 S.W.2d 300, 302 (Tex.1985), *Jones v. Stallsworth,* 55 Tex. 138, 139 (Tex. 1881); *see also* TEX. CONST. art. V, § 1 interp. commentary (Vernon 1955). Given that the legislature vested the trial court with jurisdiction over Appellant, and given the respective duties and obligations assigned to the trial court and the Department, we conclude that the construction of this statute was properly a judicial function exercised by the trial court. Therefore, we hold that the trial court had jurisdiction to construe the applicable statutes and decide this question. We overrule Appellant's second issue.

### FURLOUGHS AND PASSES

In her first issue, Appellant argues that the trial court lacked the authority to restrict Appellant from receiving passes or furloughs. Appellant's argument can be divided into two related arguments. The first is that the Department, and not the trial court, is empowered to make discretionary decisions about whether Appellant should receive passes or furloughs. The second argument, which is implicit in the first, is that the trial court reached the wrong conclusion when it determined that the statute allowing passes and furloughs did not apply to Appellant.

The first of these arguments is addressed in the previous section. We agree with Appellant as far as to say that the trial court's power would be at its lowest ebb if it sought to interject itself into treatment or other decisions specifically assigned to the Department. *But see Harrison v. State,* 179 S.W.3d 629, 633 (Tex.App.-Beaumont 2005, no pet.) ("It is within the trial court's discretion to determine the appropriate regimen of medical, psychiatric, or psychological care or treatment, which could include psychoactive medications."). As we noted previously, however, the trial court in this case did not seek to review or overturn the discretionary decision of the Department to release Appellant on a pass or furlough. Rather, it determined that the pass or furlough statute did not apply to Appellant. Therefore, for the reasons stated above, the trial court's decision is not assailable on the ground that it interfered with a discretionary function of the Department.

### Statutory Interpretation

■ Commitment following a not guilty by reason of insanity verdict is a civil matter. *Campbell v. State,* 85 S.W.3d 176,

180 (Tex.2002). Commitments pursuant to the Mental Health Code are also civil matters. *See, e.g., Johnstone,* 22 S.W.3d at 409. But these two types of commitments are not the same simply because they are both civil in character. The two commitment regimes share components, but as the Texas Supreme Court recognized, only the parts of the Mental Health Code that are "pertinent" apply to Article 46.03 commitments. *Campbell,* 85 S.W.3d at 182.

In *Campbell* the court considered the interplay between the Mental Health Code and Article 46.03 and concluded that provisions of the Mental Health Code do not apply to Article 46.03 commitments unless they are specifically incorporated into Article 46.03 or are otherwise pertinent to Article 46.03 commitments. *Id.* at 182–83. In that case, two "mental health certificates" that were a prerequisite under the Mental Health Code to a commitment hearing were not filed prior to the hearing. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.009 (Vernon 2006); *Campbell,* 85 S.W.3d at 180. The court concluded that although an Article 46.03 commitment hearing must be "conducted pursuant to the provisions of the Mental Health Code," the certificate prerequisite was not specifically or implicitly incorporated into the Article 46.03 commitment hearing and therefore not required. *Id.* ("Accordingly, we conclude that only those Mental Health Code provisions pertinent to an article 46.03 section 4(d)(5) proceeding apply.").

### I. Direct Incorporation

◼ Turning this analytical lens to section 574.082 (the pass and furlough statute), we similarly conclude that this statute is not pertinent to or incorporated into an Article 46.03 commitment. There are instances where Article 46.03 specifically incorporates parts of the Mental Health Code. For example, the initial commitment for purposes of Article 46.03 must be conducted according to the standards and procedure outlined in the Mental Health Code. *See* TEX.CODE CRIM. PROC. ANN. art. 46.03, § 4(d)(2). The duration of subsequent commitment orders is that specified by the relevant Mental Health Code section. *See* TEX.CODE CRIM. PROC. ANN. art. 46.03, § 4(d)(5) ("Commitment orders subsequent to an initial commitment order issued under this subsection shall be of an appropriate duration as specified in the Mental Health Code or the Mentally Retarded Person's Act, whichever is applicable."). Review and modification of outpatient commitment orders is completed using the procedures from the Mental Health Code or the Mentally Retarded Person's Act. *See id.* 46.03, § 4(d)(4). However, Article 46.03 does not directly incorporate the pass and furlough statute.

### II. Indirect Incorporation

Whether the pass and furlough statute is "pertinent" to Article 46.03 is a slightly different question. When the Texas Supreme Court considered pertinence in *Campbell,* it utilized statutory construction tools, including examination of the underlying policy considerations, to determine if the certificate prerequisite was necessarily included in the Article 46.03 recommitment hearing. *Campbell,* 85 S.W.3d at 183. The court concluded that it was logical not to require two mental health certificates before initiating a commitment pursuant to Article 46.03 because an Article 46.03 acquittee has already been "adjudicated violently insane." *Id.*

It is just as logical to conclude that the pass and furlough statute is not pertinent to an Article 46.03 commitment. It is clear that the legislature intended for the judiciary to be involved in the decision to release an Article 46.03 acquittee. *See* TEX.CODE CRIM. PROC. ANN. art. 46.03,

§ 4(d)(5); *State v. Roland,* 973 S.W.2d 665, 667 (Tex.1998) ("The Legislature clearly intended for the judiciary to be involved in the decision to terminate the commitment of a person found not guilty of a violent offense by reason of insanity."). In *Roland,* the Texas Supreme Court held that an Article 46.03 acquittee was not entitled to release simply because the annual commitment hearing had not occurred, basing its ruling in part on the legislative intent for releases from inpatient treatment to have judicial oversight. *Id.* The result would have been different if the Mental Health Code applied generally to Article 46.03 acquittees because it requires that the patient be discharged when the court order expires. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.085.

A pass or a furlough allows an Article 46.03 acquittee to leave a facility. The legislature did not require a judge to make the discharge decision or the decision to release an acquittee to outpatient treatment because of a concern about the name given to the mechanism of release. Instead, we believe that the legislature determined that the decision to release an acquittee should be made by a judge to protect the public and to provide another layer of review to the Department's decision making. In this context, we conclude that the pass and furlough statute is not indirectly incorporated into Article 46.03.

### III. Statutory Grouping

The pass and furlough statute is grouped with other statutes that are plainly not pertinent to Article 46.03 commitments. The pass and furlough statute is found within Subchapter F of Chapter 574 of the Mental Health Code. Subchapter F contains provisions for passes and furloughs and for the termination of court-ordered mental health services by the Department.[7] The termination provisions, the only other statutes in Subchapter F, clearly do not apply to non-Article 46.03 commitments. *See Roland,* 973 S.W.2d at 667. The legislative grouping of statutes is not definitive. *See* TEX. GOV'T CODE § 311.023(7) (Vernon 2006). However, the fact that the pass and furlough statute is functionally and textually grouped with other statutes that are not pertinent to Article 46.03 suggests that it is not pertinent to an Article 46.03 commitment.

### IV. Mental Health Code and Other Commitment Schemes

Article 46.03 does not incorporate the Mental Health Code generally. Other commitment schemes do, including the commitment schemes for those found to be incompetent prior to trial and those found not guilty by reason of insanity after September 1, 2005. At the time of the offense committed by Appellee, pretrial commitment of those found to be incompetent to stand trial was provided for by Article 46.02, Texas Code of Criminal Procedure. Under that article, treatment and release were specifically to be determined "in conformity with Subtitle C, Title 7, Health and Safety Code [the Mental Health Code], except as may be provided in this Article." Act of June 18, 1999, 76th Leg., R.S., ch. 561 § 6(b)(7), 1999 Tex. Gen. Laws 3092, 3097, *repealed by* Act of May 14, 2003, 78th Leg. R.S., ch. 35, § 15, 2003 Tex. Gen. Laws 57, 72. Therefore, the Article 46.02 commitment scheme for incompetent persons specifically incorporated all of the relevant portions of the Mental Health Code that were not specifically disclaimed. That kind of incorporating language is not present in Article 46.03.

---

**7.** Subchapter F is titled "Furlough, Discharge, and Termination of Court–Ordered Mental Health Services."

Individuals committed because they have been found to be incompetent to stand trial are not permitted passes or furloughs. *See* TEX. HEALTH & SAFETY CODE ANN. § 571.011(b). The parties offer differing interpretations for section 571.011. Appellant argues that because Article 46.03 acquittees were not excepted from the pass and furlough statute, as were Article 46.02 committees, the pass and furlough statute must be applicable to Article 46.03 acquittees. The State argues that an absurd result obtains if Appellant's interpretation is accepted because an incompetent person charged with a misdemeanor could not receive a pass but a person such as Appellant, who killed two children, would be eligible for temporary releases.

The impact of Appellant's argument is theoretically quite substantial. If the pass and furlough statute applies to Appellant, the Department would be permitted to give her unlimited passes of up to seventy-two hours and furloughs of "a longer period." *See* TEX. HEALTH & SAFETY CODE ANN. § 547.082(b).[8] However, the fact that Article 46.03 acquittees were not specifically excluded from the pass or furlough statute, as are incompetent persons, does not mean that Article 46.03 acquittees may be given passes and furloughs. Because the Mental Health Code was incorporated generally into Article 46.02, section 571.011 was necessary if the legislature did not wish for those patients to receive passes. A similar exclusion was not necessary for Article

46.03 acquittees because the Mental Health Code was not incorporated generally into Article 46.03.

By contrast, the new commitment scheme for those found not guilty by reason of insanity also incorporates the Mental Health Code in a way that Article 46.03 does not. In 2005, the legislature replaced Article 46.03 with Article 46C for persons found to be not guilty by reason of insanity of acts committed after September 1, 2005. Act of June 17, 2005, 79th Leg., R.S., ch 831, §§ 1, 2, 2005 Tex. Gen. Laws 2854. Appellant argues that the new statutes support her argument that she is eligible for passes and furloughs. She argues that Article 46C is merely a recodification of Article 46.03 and we should conclude that both Article 46C and Article 46.03 allow for passes or furloughs.

■ With respect to the first point, Article 46C provides that a "person's status as a patient or resident" is governed by the Mental Health Code. *See* TEX.CODE CRIM. PROC. ANN. art. 46C.259 (Vernon 2006). Reasonable minds may differ as to whether this means that Article 46C acquittees are eligible for passes and furloughs. Even if they are,[9] we are of the opinion that the conclusion to be drawn with respect to Article 46.03 is the opposite of that urged by Appellant. Article 46.03 acquittees are governed by the Mental Health Code only where its provisions were specifically incorporated or otherwise

---

8. A furlough would require notice to the committing court, but there is no specific mechanism for the committing court to review that decision. In fact, the statutory scheme appears to frustrate judicial review of a decision to terminate a furlough. Section 574.084(a), Texas Health and Safety Code, states that a furlough may be revoked only after an administrative hearing and within seventy-two hours of the patient's being returned to the facility.

9. To further confound the issue, the Department's attorney testified that the Department had decided not to allow passes or furloughs to persons committed under Article 46C if there was a finding of dangerous conduct. *See* TEX.CODE CRIM. PROC. ANN. art. 46C.157. The attorney testified that there was no statutory basis for this decision, but that it was part of his responsibility to "advise the facilities on a whole range of issues that aren't fleshed out by the statutes."

"pertinent." *Campbell*, 85 S.W.3d at 181–82. The legislature knew how to incorporate the Mental Health Code into the Code of Criminal Procedure. They did so for those found to be incompetent to stand trial both before 2005 and after, and for persons found not guilty by reason of insanity for acts committed after September 1, 2005. Yet the legislature did not incorporate the Mental Health Code into Article 46.03 generally.

The formal legislative history of Article 46C states that the new legislation "rewrites the insanity defense statute to streamline the process and improve the post-acquittal procedures...." *See* Senate Jurisprudence Committee, Bill Analysis, Tex. S.B. 837, 79th Leg. R.S. (2005). True to the analysis, the new statutory structure is not simply a renumbering of an older statute. Many of the features are the same, but the Article 46C.259 incorporation language is new. Even if the incorporation language is a modification of the *Campbell* pertinency requirement, a question on which we express no opinion, the legislature did not add the incorporation language to Article 46.03 when it enacted Article 46C.

Finally, Appellant asserted at oral argument that a consequence of the trial court's ruling that she was ineligible for passes would be that she could receive no treatment at all for her mental illness. Her reasoning was that because passes, furloughs, and treatment are all provided for by the Mental Health Code, a determination that she was ineligible for passes would necessarily mean that she was also ineligible for the treatment provisions of the Mental Health Code.[10] This argument,

however, fails to take into account the determination in *Campbell* that the Mental Health Code applies if it is specifically incorporated or otherwise pertinent. The trial court did not rule that the entire Mental Health Code did not apply to Appellant, only that a single statute within the Mental Health Code that was not incorporated or pertinent to an Article 46.03 commitment did not apply to her. We think it beyond reasonable dispute that any statutes that relate to or allow the Department to provide Appellant with counseling, medication, and other treatment would be pertinent to Appellant's commitment.

### Summary

The pass and furlough statute is not specifically incorporated into Article 46.03. The pass and furlough statute is in the subchapter of the Mental Health Code that deals with release and discharge and does not apply to Article 46.03 acquittees. And unlike several other commitment schemes, Article 46.03 does not incorporate the Mental Health Code generally. Therefore, as a matter of statutory construction, we conclude that the pass and furlough statute is not "pertinent" to Article 46.03. Accordingly, we hold that the pass and furlough statute found in the Mental Health Code does not apply to Appellant so long as she is committed to inpatient care under Article 46.03. We overrule Appellant's first issue.

### CONSTITUTIONAL RIGHT TO A PASS OR FURLOUGH

In her third issue, Appellant asserts that she has a constitutional right to

---

10. Appellant also argues in her brief that the trial court's order would mean that she could not be treated for a medical emergency if she could not receive care on the grounds of the hospital. After review of the record, we are not persuaded that the Department would

deny her care in the event of a medical emergency. The trial court's order does not restrict Appellant to her quarters; it simply states that the statutory provision allowing for passes does not apply to Appellant.

treatment, which includes a right to passes. Specifically, she contends she has a substantive due process right to passes because the professionals treating her determined that she should have them. The State does not dispute that a committed person possesses the right to treatment, but argues that the Appellant's due process rights are sufficiently vindicated by periodic review of her commitment.

█ The purpose of Appellant's commitment is to provide her with treatment, as well as to protect her and society. *See Jones,* 463 U.S. at 368, 103 S.Ct. at 3051–52. As the State argues, periodic review of her commitment satisfies some due process considerations and, of course, is required by statute. *See Roland,* 973 S.W.2d at 666; Tex.Code Crim. Proc. Ann. art. 46.03, § 4(d)(5). But the trial court determined that Appellant was not eligible for passes as a matter of law, not that she should not have them for some period of time. Therefore, periodic review cannot fulfill a right to a pass, if one existed, because that question will not be reviewed periodically.

In her argument, Appellant relies upon the due course of law provision found in Article I, Section 19 of the Texas Constitution, but does not argue that it provides broader due process protection than does the Fourteenth Amendment to the United States Constitution. Accordingly, we will assume that each document contains the same protections. *See Tex. Workers' Comp. Comm'n v. Patient Advocates,* 136 S.W.3d 643, 658 (Tex.2004) ("Texas's due course of law clause and the federal due process clause are textually different, but we generally construe the due course clause in the same way as its federal counterpart.").

█ In a substantive due process analysis, we determine (1) whether the party had a protected liberty interest, and

(2) if the government deprived him or her of that interest capriciously and arbitrarily. *See Dallas County v. Gonzales,* 183 S.W.3d 94, 111 (Tex.App.-Dallas 2006, no pet.) (citing *Foucha v. Louisiana,* 504 U.S. 71, 80, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992)). The level of scrutiny depends on the nature of the right involved. If the right is a "fundamental right," the state must show a compelling interest to curtail it and must do so as narrowly as possible. *See Reno v. Flores,* 507 U.S. 292, 301–02, 113 S.Ct. 1439, 1447, 123 L.Ed.2d 1 (1993); *Collins v. Harker Heights,* 503 U.S. 115, 125, 112 S.Ct. 1061, 1068, 117 L.Ed.2d 261 (1992). If the right is not a fundamental right, substantive due process merely requires a rational relationship between the state's interest and the right being curtailed. *Washington v. Glucksberg,* 521 U.S. 702, 722, 117 S.Ct. 2258, 2268, 138 L.Ed.2d 772 (1997). Fundamental rights are those that are "deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Id.,* 521 U.S. at 721, 117 S.Ct. at 2268 (internal quotations and citations omitted).

█ With respect to civil commitments, the Due Process Clause "requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." *Jones,* 463 U.S. at 368, 103 S.Ct. at 3051–52 (quoting *Jackson v. Indiana,* 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972)); *see also Seling v. Young,* 531 U.S. 250, 265, 121 S.Ct. 727, 736, 148 L.Ed.2d 734 (2001) ("Accordingly, due process requires that the conditions and duration of confinement under the Act bear some reasonable relation to the purpose for which persons are committed.").

Those acquitted by reason of insanity are a special class and may be treated differently from those committed under ordinary civil commitment standards. *Jones*, 463 U.S. at 370, 103 S.Ct. at 3053. Indeed, the Supreme Court has held that with respect to insanity acquittees, as in other areas "fraught with medical and scientific uncertainties, legislative options must be especially broad and courts should be cautious not to rewrite legislation." *Id.*

This is an area that is certainly fraught with medical and scientific uncertainties. Acquittees situated as Appellant have been found to have committed the act for which they were charged. *See* Tex.Code Crim. Proc. Ann. art. 46.03, § 1(c). Furthermore, such persons have been found to meet the criteria for commitment but have not reached the level where the person can be released for outpatient treatment. *See id.* § 4(d)(3), (4). Also, "[t]he state has a substantial interest in avoiding premature release of insanity acquittees, who have committed acts constituting felonies and have been declared dangerous to society." *Hickey v. Morris*, 722 F.2d 543, 548 (9th Cir.1983).

Accordingly, the states have arrived at various conclusions in their attempt to fashion remedies for the issues raised by offenses committed by mentally ill or insane persons that comport with each state's respective goals, traditions, and conclusions about these issues, as well as the requirements imposed by their constitutions and the U.S. Constitution. As the Supreme Court noted recently, a "significant number of these jurisdictions supple-

ment the traditional 'not guilty by reason of insanity' verdict with an alternative of 'guilty but mentally ill.'" *Clark v. Arizona*, —— U.S. ——, ——, 126 S.Ct. 2709, 2721, 165 L.Ed.2d 842 (2006). While not passing on the question, the Court also noted that four states provided no affirmative insanity defense. *Id.*, 126 S.Ct. at 2721–22. In that context, the decision not to allow passes or furloughs to those who meet the standards for commitment and who have been shown to have committed an offense while insane is within the broad range of legislative options for dealing with this complicated issue.[11] *Cf. id.*, 126 S.Ct. at 2722 ("[T]he insanity rule, like the conceptualization of criminal offenses, is substantially open to state choice.").

Appellant argues that *Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), creates a liberty interest that can be satisfied only if treatment decisions are made by a qualified professional and meet an accepted standard of professional judgment. *Id.*, 457 U.S. at 319 n. 25, 102 S.Ct. at 2459–60 n. 25. She further argues that "whenever a discrete recommendation for treatment is made by the state's own professionals, the court must accept the judgment of these professionals unless it is a substantial departure from accepted professional judgment." This overstates the Supreme Court's conclusion in *Youngberg*. That case dealt with a mentally retarded individual who was committed in an ordinary civil commitment. The Court held that the state had a duty to provide the committed individual with a safe environment and to facilitate

---

**11.** The scheme in Texas is less restrictive than is constitutionally required. For example, an Article 46.03 commitment allows for treatment to be provided on an outpatient basis, a feature that does not appear to be
Footnote continued.
constitutionally mandated. Additionally, an Article 46.03 commitment can last only as

long as the maximum sentence allowable for the charged offense. Tex.Code Crim. Proc. Ann. art. 46.03, § 4(d)(7). This is not a requirement imposed by the U.S. Constitution. *See Jones*, 463 U.S. at 369–70, 103 S.Ct. at 3052–53.

his ability to function free of bodily restraints. *Id.*, 457 U.S. at 324, 102 S.Ct. at 2463. This is not a general right to treatment, nor did *Youngberg* deal with substantive due process rights. *See id.*, 457 U.S. at 317 n. 19, 102 S.Ct. at 2459 n. 19 (Declining to address substantive due process claim.). Rather, the Court concluded that a right to "minimally adequate training" may exist where necessary to reduce the need for restraints or to reduce the likelihood of violence. *Id.*, 457 U.S. at 322–24, 102 S.Ct. at 2461–62 ("Respondent thus enjoys constitutionally protected interests in conditions of reasonable care and safety, reasonably nonrestrictive confinement conditions, and such training as may be required by those interests."). In a subsequent opinion, the Court characterized the holding in *Youngberg* as standing "only for the proposition that when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189, 199–200, 109 S.Ct. 998, 1005, 103 L.Ed.2d 249 (1989).[12]

Even if the *Youngberg* analysis applied here, Appellant is receiving "minimally adequate training" without passes or furloughs. The "minimally adequate training" required in *Youngberg* was that training which would allow the committee

in that case to be as free of physical restraints (shackles) as possible. *See Youngberg*, 457 U.S. at 310–11 & n. 4, 102 S.Ct. at 2455 & n. 4. That right was derivative of his right to reasonable care. Appellant has received, by all accounts, a wide array of high quality services from the state mental health professionals. She is provided with medication and a safe, comfortable place to reside. Her meals are provided, and she is able to engage in one on one psychotherapy and to participate in group therapy and classes related to her treatment. Additionally, she is permitted to participate in distance learning opportunities and has access to the grounds of the facility. She has earned a high level of freedom on the campus itself. She is not confined or shackled, and she is free to socialize with other committees who also have access to the grounds. This stands in sharp contrast to the committee in *Youngberg*, a mentally retarded individual who was shackled for hours at a time and suffered injury and abuse.

Some of the professionals treating Appellant testified that the passes were useful as an assessment tool and to help with her treatment. The witnesses also testified that Appellant could continue to be treated without passes. The State's expert witness testified that passes were in the nature of a luxury and were not necessary to treatment. Several witnesses con-

---

**12.** In *C.J. v. Dep't of Human Servs.*, 331 Ill. App.3d 871, 264 Ill.Dec. 835, 771 N.E.2d 539 (2002), cited by Appellant, an intermediate court of appeals in Illinois held that *Youngberg* meant the hospital could not impose a blanket condition that NGRI acquittees be denied access to the grounds of the facility. But it is important to recognize that *C.J.*
Footnote continued.
involved the question of whether the hospital employees were making proper treatment decisions, a procedural due process question. The range of acceptable choices made by a

legislature is different. The legislature may consider all aspects of an issue including their perceptions of professional conclusions, but also factor in the safety of the community, the patient, and other reasonable concerns. *See also Knight v. Mills*, 836 F.2d 659, 667–68 (1st Cir.1987); *but see Texas Dep't of Mental Health & Mental Retardation v. Petty*, 848 S.W.2d 680, 684 n. 6 (Tex.1992) (Plurality decision characterizing *Youngberg* as holding that institutionalized patients possessed constitutional right to adequate treatment.).

ceded that there were classes of committees for whom passes were not permitted.[13] Indeed, it appears that the Department's own guidelines were rewritten in response to the passage of Article 46C, and that the Department's legal staff made the judgment that Article 46C acquittees for which there had been a finding of dangerous conduct would not be permitted passes. The fact that treatment could be continued without passes and that the Department decided unilaterally not to allow passes for certain patients undercuts Appellant's argument that passes are necessary to her treatment.

The nature of a commitment need only be reasonably related to the purpose of the commitment. Those who are committed under Article 46.03 are different from ordinary civil committees and, as the court recognized in *Jones,* present different challenges. *Id.,* 463 U.S. at 370, 103 S.Ct. at 3053. The legislature's decision not to allow passes to Article 46.03 acquittees is reasonably related to the reasons for commitment, namely to provide treatment and to safeguard the patient and society. Additionally, the statutory scheme provides for less restrictive treatment for Article 46.03 acquittees in the form of outpatient treatment when they have achieved a level of stability such that their treatment can be delivered on that basis. *See* TEX.CODE CRIM. PROC. ANN. art. 46.03, § 4(d)(4). In balancing the goals of protecting the acquittee and society and providing treatment, we conclude that the legislative decision not to permit passes to Article 46.03 acquittees bears a reasonable relation to the reasons for the commitment. We overrule Appellant's third issue.

### SUFFICIENCY OF THE EVIDENCE

In her fourth issue, Appellant asserts that the evidence is legally and factually insufficient to support the trial court's order. Without conceding the issue, Appellant argues that even if the trial court had the authority to countermand the decision of the Department to allow her to go on passes, its decision lacked a factual basis. The trial court's ruling was not a review of the Department's discretionary decision to allow passes. The trial court did not make factual findings, but held as a matter of law that passes were not available for those committed pursuant to Article 46.03, Texas Code of Criminal Procedure. Therefore, there are no factual determinations to review. We overrule Appellant's fourth issue.

### CONCLUSION

As a matter of first impression, we hold that those persons committed under Article 46.03, Texas Code of Criminal Procedure, are not permitted passes or furloughs by the Mental Health Code. Article 46.03 does not explicitly or implicitly incorporate the pass and furlough statute found in the Mental Health Code. Therefore, that statute does not apply to an Article 46.03 commitment. Appellant does not possess a substantive due process right to a pass or furlough because there is a reasonable relationship between the purpose of her commitment, to safeguard her and the public and to provide treatment for her mental illness, and the legislative decision not to allow passes to Article 46.03 acquittees committed to inpatient treatment. We *affirm* the trial court's order.

### APPENDIX

Art 46.03. Insanity defense

The Insanity Defense

---

**13.** The director of the facility testified that she had a chart prepared by counsel that told her which type of committees were permitted passes and which were not.

Sec. 1.  (a) The insanity defense provided in Section 8.01 of the Penal Code shall be submitted to the jury only if supported by competent evidence.

(b) When the insanity defense is submitted, the trier of facts shall determine and include in the verdict or judgment or both whether the defendant is guilty, not guilty, or not guilty by reason of insanity.

(c) The trier of facts shall return a verdict of not guilty by reason of insanity if the prosecution has established beyond a reasonable doubt that the alleged conduct was committed and the defense has established by a preponderance of the evidence that the defendant was insane at the time of the alleged conduct.

(d) A defendant who has been found not guilty by reason of insanity shall stand acquitted of the offense charged and may not be considered a person charged with a criminal offense.

(e) The court, the attorney for the state, or the attorney for the defendant may not inform a juror or a prospective juror of the consequences to the defendant if a verdict of not guilty by reason of insanity is returned.

Raising the Insanity Defense

Sec. 2.  (a) A defendant planning to offer evidence of the insanity defense shall file a notice of his intention to offer such evidence with the court and the prosecuting attorney:

(1) at least 10 days prior to the date the case is set for trial; or

(2) if the court sets a pretrial hearing before the 10–day period, the defendant shall give notice at the hearing; or

(3) if the defendant raises the issue of his incompetency to stand trial before the 10–day period, he shall at the same time file notice of his intention to offer evidence of the insanity defense.

(b) Unless notice is timely filed pursuant to Subsection (a) of this section, evidence on the insanity defense is not admissible unless the court finds that good cause exists for failure to give notice.

Examination of the Defendant

Sec. 3.  (a) If notice of intention to raise the insanity defense is filed under Section 2 of this article, the court may, on its own motion or motion by the defendant, his counsel, or the prosecuting attorney, appoint disinterested experts experienced and qualified in mental health and mental retardation to examine the defendant with regard to the insanity defense and to testify thereto at any trial or hearing on this issue.

(b) The court may order any defendant to submit to examination for the purposes described in this article.  If the defendant is free on bail, the court in its discretion may order him to submit to examination.  If the defendant fails or refuses to submit to examination, the court may order him to custody for examination for a reasonable period not to exceed 21 days.  The court may not order a defendant to a facility operated by the Texas Department of Mental Health and Mental Retardation for examination without the consent of the head of that facility or for a period exceeding 21 days.  If a defendant who has been ordered to a facility operated by the Texas Department of Mental Health and Mental Retardation for examination remains in such facility for a period of time exceeding 21 days, the head of that facility shall cause the defendant to be immediately transported to the committing court and placed in

the custody of the sheriff of the county in which the committing court is located. That county shall reimburse the Texas Department of Mental Health and Mental Retardation facility for the mileage and per diem expenses of the personnel required to transport the defendant calculated in accordance with the state travel regulations in effect at that time.

(c) The court shall advise any expert appointed pursuant to this section of the facts and circumstances of the offense with which the defendant is charged and the elements of the insanity defense.

(d) A written report of the examination shall be submitted to the court within 30 days of the order of examination, and the court shall furnish copies of the report to the defense counsel and the prosecuting attorney. The report shall include a description of the procedures used in the examination and the examiner's observations and findings pertaining to the insanity defense. The examiner shall also submit a separate report setting forth his observations and findings concerning:

(1) whether the defendant is presently mentally ill and requires court-ordered mental health services; or

(2) whether the defendant is a mentally retarded person as defined in the Mentally Retarded Persons Act of 1977 (Article 5547–300, Vernon's Texas Civil Statutes).

(e) The appointed experts shall be paid by the county in which the indictment was returned or information was filed. A facility operated by the Texas Department of Mental Health and Mental Retardation which accepts a defendant for examination under Subsection (a) of this section shall be reimbursed by the county in which the indictment was returned or information was filed for such expenses incurred as are determined by the department to be reasonably necessary and incidental to the proper examination of the defendant.

(f) When a defendant wishes to be examined by a psychiatrist or other expert of his own choice, the court on timely request shall provide the examiner with reasonable opportunity to examine the defendant.

NOTICE: FIRST OF TWO VERSIONS OF SUBD. 3(g)

Effective until January 1, 2004

(g) The experts appointed under this section to examine the defendant with regard to the insanity defense also may be appointed by the court to examine the defendant with regard to his competency to stand trial pursuant to Section 3 of Article 46.02 of this code, provided that separate written reports concerning the defendant's competency to stand trial and the insanity defense shall be filed with the court.

NOTICE: SECOND OF TWO VERSIONS OF SUBD. 3(g)

Effective January 1, 2004

(g) The experts appointed under this section to examine the defendant with regard to the insanity defense also may be appointed by the court to examine the defendant with regard to his competency to stand trial pursuant to Chapter 46B, provided that separate written reports concerning the defendant's competency to stand trial and the insanity defense shall be filed with the court.

Disposition Following Acquittal by Reason of Insanity

Sec. 4. (a) Act Did Not Involve Serious Bodily Injury; Civil Commitment. If a defendant is found not guilty by reason of insanity in the trial of a criminal offense, the court shall determine whether the conduct committed by the defendant involved an act, attempt, or threat of serious bodily injury to another person. If the court determines that the defendant had not committed an act, attempt, or threat of serious bodily injury to another person, then the court shall further determine whether there is evidence to support findings that the defendant is either mentally ill or is a mentally retarded person. If the court determines that there is evidence to support either of such findings, the court shall transfer the defendant to the appropriate court for civil commitment proceedings and may order the defendant detained in jail or other suitable place pending the prompt initiation and prosecution by the attorney for the state or other person designated by the court of appropriate civil proceedings to determine whether the defendant shall be committed to a mental health or mental retardation facility; provided, however, that a patient placed in a facility of the Texas Department of Mental Health and Mental Retardation pending civil hearing under this section shall only be detained pursuant to the provisions for an Order of Protective Custody as set out in the Texas Mental Health Code and with the consent of the head of the facility, or the court may give the defendant into the care of a responsible person on satisfactory security being given for his proper care and protection; otherwise, the defendant shall be discharged.

(b) Commitment to Maximum Security Unit; Transfer to Nonsecurity Unit. A person committed to a mental health or mental retardation facility as a result of the proceedings initiated pursuant to Subsection (d) of this section shall be committed to the maximum security unit of any facility designated by the Texas Department of Mental Health and Mental Retardation. Within 60 days following arrival at the maximum security unit, the person shall be transferred to a nonsecurity unit of a mental health or mental retardation facility designated by the Texas Department of Mental Health and Mental Retardation unless the person is determined to be manifestly dangerous by a review board within the Texas Department of Mental Health and Mental Retardation. The Commissioner of Mental Health and Mental Retardation shall appoint a review board of five members, including one psychiatrist licensed to practice medicine in this state and two persons who work directly with mental health patients or mentally retarded clients, to determine whether the person is manifestly dangerous. If the superintendent of the facility at which the maximum security unit is located disagrees with the determination, then the matter will be referred to the Commissioner of Mental Health and Mental Retardation who will resolve the disagreement by deciding whether the person is manifestly dangerous.

(c) Transcript of all Medical Testimony. The court shall order that a transcript of all medical testimony received in both the criminal proceedings and the commitment proceedings be prepared forthwith by the court reporters and that such transcripts, together with a statement of the facts and circumstances surrounding the alleged offense, shall accompany the patient to the mental health or mental retardation facility.

(d) Act, Attempt, or Threat of Serious Bodily Injury; Special Commitment; Out-patient Supervision; Recommitment.

(1) Civil Commitment or Automatic Commitment for Evaluation. If a defendant is found not guilty by reason of insanity in the trial of a criminal offense and the court determines that the defendant committed an act, attempt, or threat of serious bodily injury to another person, the trial court may transfer the defendant to the appropriate court for civil commitment proceedings on receipt of that court's written consent to the transfer or may retain jurisdiction over the defendant as provided by this subdivision. A trial court that transfers a defendant to the appropriate court for civil commitment proceedings shall order the defendant detained in jail or other suitable place pending the initiation of appropriate civil proceedings. A trial court that does not transfer a defendant to the appropriate court for civil commitment proceedings under this subdivision shall retain jurisdiction over the defendant and shall proceed as provided by this subsection. The court shall order the defendant to be committed to the maximum security unit of any facility designated by the Texas Department of Mental Health and Mental Retardation until such time as the defendant is eligible for release pursuant to this subsection or is eligible for transfer to a nonsecurity facility pursuant to Subsection (b) of this section. The court shall order that an examination of the defendant's present mental condition be conducted and that a report be filed with the court.

(2) Hearing. A hearing shall take place not later than 30 days following the acquittal order to determine if the person acquitted by reason of insanity is presently mentally ill or mentally retarded and meets the criteria for involuntary commitment as provided in the Texas Mental Health Code (Article 5547–1 et seq., Vernon's Texas Civil Statutes) or the Mentally Retarded Person's Act (Article 5547–300, Vernon's Texas Civil Statutes). The hearing shall be conducted by the trial court in the same manner as a hearing on an application for involuntary commitment pursuant to the Mental Health Code or the Mentally Retarded Person's Act.

(3) Determination and Disposition. If, after the hearing, the court finds that the acquitted person meets the criteria for involuntary commitment, the court shall order that person to be committed to a mental hospital or other appropriate facility, as designated by the Texas Department of Mental Health and Mental Retardation, for a period not exceeding 90 days. The court may order the acquitted person to participate in a prescribed regimen of medical, psychiatric, or psychological care or treatment on an out-patient basis pursuant to the provisions of Subdivision (4) of this subsection. If the court finds that the person acquitted by reason of insanity does not meet the criteria for involuntary commitment, the court shall order that person's immediate release.

(4) Out-patient Supervision. If at the time of the evaluation as provided in Subdivision (1) of this subsection prior to the hearing on involuntary commitment, the report of the defendant's present mental condition includes a recommendation that the

person acquitted by reason of insanity meets the criteria for involuntary commitment but that such treatment or care can be provided on an out-patient basis provided he participates in a prescribed regimen of medical, psychiatric, or psychological care or treatment, and the court finds that the acquitted person does meet those criteria, the court may order the acquitted person to participate in that prescribed regimen of medical, psychiatric, or psychological care or treatment. The court may at any time modify or revoke the out-patient regimen of medical, psychiatric, or psychological care or treatment pursuant to the requirements of the Mental Health Code or the Mentally Retarded Person's Act. The court shall review the continuing need for such order at the completion of 90 days from the issuance of the initial out-patient order and no less often than once every 12 months for subsequent out-patient orders pursuant to the requirements of the Mental Health Code or Mentally Retarded Person's Act.

(5) Judicial Release. A person acquitted by reason of insanity and committed to a mental hospital or other appropriate facility pursuant to Subdivision (3) of this subsection may only be discharged by order of the committing court in accordance with the procedures specified in this subsection. If at any time prior to the expiration of a commitment order the superintendent of the facility to which the acquitted person is committed determines that the person has recovered from his mental condition to such an extent that he no longer meets the criteria for involuntary commitment or that he continues to meet those criteria but that treatment or care can be provided on an out-patient basis provided he participates in a prescribed regimen of medical, psychiatric, or psychological care and treatment, the director of the facility shall promptly file a certificate to that effect with the clerk of the court that ordered the commitment. If the superintendent of the facility intends to recommend release, out-patient care, or continued in-patient care upon the expiration of a commitment order, the superintendent shall file a certificate to that effect with the clerk of the court that ordered the commitment at least 14 days prior to the expiration of that order. The clerk shall notify the district or county attorney upon receipt of such certificate. Upon receipt of such certificate or upon the expiration of a commitment order, the court shall order the discharge of the acquitted person or on the motion of the district or county attorney or on its own motion shall hold a hearing, prior to the expiration of the commitment order, conducted pursuant to the provisions of the Mental Health Code or the Mentally Retarded Person's Act as appropriate, to determine if the acquitted person continues to meet the criteria for involuntary commitment and whether an order should be issued requiring the person to participate in a prescribed regimen of medical, psychiatric, or psychological care or treatment on an out-patient basis as provided in Subdivision (4) of this subsection. If the court determines that the acquitted person continues to meet the criteria for involuntary commitment and that out-patient supervision is not appropriate, the court shall order that the person be returned to a mental hospital or other appropriate in-patient or residential facility. If

the court finds that continued in-patient or residential care is required, the commitment will continue until the expiration of the original order, if one is still in effect, or the court shall issue a new commitment order of an appropriate duration as specified in the Mental Health Code or the Mentally Retarded Person's Act. If a hearing on a request for discharge or out-patient supervision has been held prior to the expiration of a commitment order, the court is not required to act on a subsequent request except upon the expiration of a commitment order or upon the expiration of 90 days following a hearing on a previous request. Commitment orders subsequent to an initial commitment order issued under this subsection shall be of an appropriate duration as specified in the Mental Health Code or the Mentally Retarded Person's Act, whichever is applicable.

(6) Modification or Revocation of Outpatient Supervision. The director of the facility or other individual responsible for administering a regimen of out-patient care or treatment imposed on an acquitted person pursuant to Subdivision (4) or (5) of this subsection shall notify the court ordering such out-patient care of any failure of the person to comply with that regimen or if the person's condition has so deteriorated that out-patient care is no longer appropriate. Upon such notice or upon other probable cause to believe that the person has failed to comply with the prescribed regimen of medical, psychiatric, or psychological care or treatment, the person may be taken into custody and brought without unnecessary delay before the court having jurisdiction over him. The court shall determine, after a

hearing, whether the person should be remanded to a suitable facility for protective custody, pursuant to the provisions of the Mental Health Code or the Mentally Retarded Person's Act, pending a hearing on whether the person continues to meet the criteria for involuntary commitment and whether the out-patient order should be modified or revoked.

(7) In no event may a person acquitted by reason of insanity be committed to a mental hospital or other inpatient or residential facility pursuant to this subsection for a cumulative period of time which exceeds the maximum term provided by law for the crime for which the acquitted person was tried. Upon expiration of that maximum term, the acquitted person may be further confined in such a facility only pursuant to civil commitment proceedings.