NO. 12-06-00170-CV

 

IN THE COURT OF APPEALS

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

 

 

DEANNA LANEY,   §          APPEAL FROM THE 114TH

APPELLANT

 

V.        §          JUDICIAL DISTRICT COURT OF

 

THE STATE OF TEXAS,

APPELLEE   §          SMITH COUNTY, TEXAS

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 

 



OPINION








            Deanna Laney was committed to the
Texas Department of Mental Health and Mental Retardation for inpatient care
after she was found not guilty by reason of insanity of capital murder.  She appeals from the trial court’s order that
the Department may not grant her passes to leave the facility.  In four issues, Appellant argues that the
Department is given statutory authority to grant passes, that the trial court’s
order violates the separation of powers and due course of law provisions of the
Texas Constitution, and that the evidence is insufficient to support the
order.  We affirm.

 

Background








            In
2003, Appellant killed two of her children and seriously injured another.  She was indicted for capital murder, and a
jury trial was held in 2004.  The jury
found Appellant not guilty by reason of insanity.  Following the verdict, the trial court retained
jurisdiction over Appellant and held a hearing on the matter of Appellant’s
commitment to the Texas Department of Mental Health and Mental Retardation
(Department).  The trial court found that
Appellant had committed acts that involved serious bodily injury and that she
met the criteria for commitment. 
Accordingly, the trial court ordered that Appellant be committed to a
maximum security facility operated by the Department.  Later, and in accordance with state law,
Appellant was transferred to a less restrictive facility.  As required by law, the trial court reviewed
the commitment annually and recommitted Appellant in July 2004, July 2005, and
July 2006.[1]

            After
the July 2005 recommitment, the State learned that the Department had granted
Appellant passes to leave the grounds of the facility, including passes that
allowed her to go shopping with her parents on brief excursions that were not
supervised by hospital staff.[2] 
The State filed a motion asking the trial court to hold a hearing on the
propriety of the passes.  The trial court
held a two day hearing and concluded that state law did not allow the
Department to grant passes to Appellant. 
The trial court issued a written clarification order in May 2006
memorializing that ruling.  Appellant
appeals from this order.[3]

Jurisdiction








            Although
not raised by the parties, it is incumbent on us to determine whether we have
jurisdiction of this appeal.  See Campbell
v. State, 85 S.W.3d 176, 180 (Tex. 2002).  Two jurisdictional questions are
presented.  The first is whether this
appeal is moot because the 2005 commitment order, which the trial court
clarified, has expired by its own terms and been replaced with a subsequent
order that does not contain the same clarification.  The second, which Appellant addresses in her
second issue, is whether the trial court had jurisdiction to construe the
relevant statutes. 

This Court’s
Jurisdiction

            Under
Article V, Section 8 of the Texas Constitution, the “judicial power does not
embrace the giving of advisory opinions.” 
General Land Office v. OXY U.S.A., Inc., 789 S.W.2d 569, 570 (Tex. 1990).  Commonly called the mootness doctrine, an
appeal is moot, and we must dismiss it, if no case or controversy continues to
exist.  Id. at 570–71.

            The
clarification order is no longer in effect, strictly speaking, because it
clarified the 2005 commitment order and that commitment order has expired.  There is an exception to the mootness
doctrine for judicial actions, like commitment orders, that impose a collateral
consequence that persists beyond the order itself.  See Johnstone v. State, 22 S.W.3d 408, 409 n.1 (Tex. 2000) (per
curiam).  But the trial court’s
clarification order, like a commitment following an acquittal for reason of
insanity, imposes no collateral consequence. 
See Jones v. United States, 463 U.S. 354, 367 n.16, 103 S. Ct. 3043, 3051 n.16, 77 L. Ed. 2d 694
(1983) (“A criminal defendant who successfully raises the insanity defense
necessarily is stigmatized by the verdict itself, and thus the commitment
causes little additional harm in this respect.”).  There is also an exception to the mootness
doctrine for questions that are “capable of repetition yet evading review.”  See State v. Lodge, 608 S.W.2d 910, 912 (Tex. 1980).  This case has been expeditiously heard and
briefed, both at the trial court and on appeal, but briefing in this matter had
not been completed when the July 2006 commitment order was entered.  However, even if the clarification order came
too close in time to the annual recommitment hearing to allow for appellate
review, Appellant still could have appealed the July 2006 commitment
order.  Disposition of that appeal could
have been expedited.  Therefore, this
issue is not so time sensitive that it would continually evade review.

            We
conclude, however, that this matter is not moot for the same reason that
Appellant did not appeal from the July 2006 order.  The Department’s lawyer testified that the
Department would follow the decision made by the trial court on this question,
and the Department agreed prior to the hearing to refrain from issuing
additional passes until the trial court ruled. 
We accept this to mean that the Department will continue to construe the
statute as the trial court ordered. 
Therefore, a live controversy exists, and we have jurisdiction, because
the trial court’s construction of the statute continues to control this aspect
of Appellant’s commitment.

The Trial
Court’s Jurisdiction

            With
respect to the jurisdiction of the trial court, there is a conflict, Appellant
asserts, between the jurisdiction of the trial court and the Department, an
administrative agency.  The Department
had construed the relevant statutes to allow off campus passes and by
extension, furloughs, to patients such as Appellant who have been found not
guilty by reason of insanity and committed pursuant to Texas Code of Criminal
Procedure, article 46.03.[4] 
The trial court held a hearing on the matter and concluded, as a matter
of law, that the statute did not allow the Department to grant passes to
Appellant, an Article 46.03 acquittee.

            Appellant
argues that the trial court’s order inappropriately encroaches on an area in
which the Department exercises discretionary authority.  We think it is something less than that,
however.  Appellant is correct that the
Texas Constitution provides that one branch of government may not exercise the
functions “properly attached to either one of the others” and that the Mental
Health Code gives the Department the authority to authorize passes for certain
committed persons.  See Tex. Const. art. II, § 1; Tex. Health & Safety Code Ann. §
547.082 (Vernon 2006).[5] 
But the trial court did not seek to review or curtail the Department’s
discretionary decision to allow Appellant to leave the facility on a pass.  Instead, it was the trial court’s judgment
that Appellant was ineligible as a matter of law for such passes because
section 547.082 did not apply to her. 








            In
the broadest sense, the trial court has jurisdiction over Appellant.  Because Appellant was found not guilty by
reason of insanity and was committed pursuant to Article 46.03, the trial court
has jurisdiction over her for a period of time equal to the maximum term of
imprisonment for which she could have been sentenced had she been found
guilty.  Tex. Code Crim. Proc. Ann. art. 46.03, §§ 4(d)(1), (7).  The charged offense was capital murder.  Therefore, the trial court retains
jurisdiction over Appellant for her “life.”  
See Tex. Penal Code Ann.
§ 12.31(a) (Punishment for capital murder where the State does not seek the
death penalty is life imprisonment.). 
That jurisdiction specifically includes the authority to commit a person
who has been found not guilty by reason of insanity, to make a finding as to
whether the act committed by the person involved serious bodily injury to
another person, to determine whether the person should be moved from inpatient
care to outpatient care, and to determine if the person should be
discharged.  See Tex. Code Crim. Proc. Ann. art. 46.03, §§
4(d)(3), (1), (4), (5).  

            The
treatment for mental illness is delegated to the Department, and the Department
has developed rules to implement that requirement.  See Tex.
Health & Safety Code Ann. § 571.006; see generally Tex. Admin. Code Title 25, Part 1 (West
2006).[6]  By statute, the Department is given authority
to provide care to committed individuals and to make the decision whether to
place the individual in a maximum security facility or a less secure
facility.  Tex. Health & Safety Code Ann. § 576.022; Tex. Code Crim. Proc. Ann. art. 46.03, §
4(b).








            There
is the potential for jurisdictional overlap on the question of passes and
furloughs.  The relevant statute provides
that the facility administrator may permit a patient to leave the facility
under a pass or furlough.  See Tex. Health & Safety Code Ann. §
574.082(a).  Citing Article 46.03,
subsection 4(d)(3), Texas Code of Criminal Procedure, the State argues that the
trial court is given authority to direct a patient to participate in a
prescribed regimen of medical, psychiatric, or psychological care.  Accordingly, the State concludes, the trial
court has power to regulate the granting of passes and furloughs.  But this is not the relevant inquiry here.  The trial court did not seek to direct
Appellant’s course of treatment or to review discretionary decisions made by
her treatment team.  The trial court
simply construed a statute.

            The
relevant inquiry is whose construction of the statute should prevail.  The powers of the Department are established
by statute.  See  Tex.
Health & Safety Code Ann. § 571.006. 
Within the decisions delegated to the Department are the discretionary
decisions to grant passes and furloughs and to release patients.  See Tex.
Health & Safety Code Ann. §§ 574.082, 574.085, 574.086.  The interpretation of statutes may be part of
the process, but the decision to give a pass or furlough is made primarily on
the basis of the medical and clinical judgments of the Department’s
employees.  The trial court’s decision
that section 574.082 did not apply to an Article 46.03 acquittee was strictly a
matter of statutory construction. 
Construction of statutes is principally a judicial function.  See City of Round Rock v.
Smith, 687 S.W.2d 300, 302 (Tex. 1985), Jones
v. Stallsworth, 55 Tex. 138, 139 (Tex.
1881); see also Tex. Const.
art. V, § 1 interp. commentary (Vernon 1955). 
Given that the legislature vested the trial court with jurisdiction over
Appellant, and given the respective duties and obligations assigned to the
trial court and the Department, we conclude that the construction of this
statute was properly a judicial function exercised by the trial court.  Therefore, we hold that the trial court had
jurisdiction to construe the applicable statutes and decide this question.  We overrule Appellant’s second issue.

 

Furloughs and Passes

            In
her first issue, Appellant argues that the trial court lacked the authority to
restrict Appellant from receiving passes or furloughs.  Appellant’s argument can be divided into two
related arguments.  The first is that the
Department, and not the trial court, is empowered to make discretionary
decisions about whether Appellant should receive passes or furloughs.  The second argument, which is implicit in the
first, is that the trial court reached the wrong conclusion when it determined
that the statute allowing passes and furloughs did not apply to Appellant.  

            The
first of these arguments is addressed in the previous section.  We agree with Appellant as far as to say that
the trial court’s power would be at its lowest ebb if it sought to interject
itself into treatment or other decisions specifically assigned to the
Department.  But see Harrison
v. State, 179 S.W.3d 629, 633 (Tex. App.–Beaumont
2005, no pet.) (“It is within the trial court’s discretion to determine the
appropriate regimen of medical, psychiatric, or psychological care or
treatment, which could include psychoactive medications.”).  As we noted previously, however, the trial
court in this case did not seek to review or overturn the discretionary
decision of the Department to release Appellant on a pass or furlough.  Rather, it determined that the pass or
furlough statute did not apply to Appellant. 
Therefore, for the reasons stated above, the trial court’s decision is
not assailable on the ground that it interfered with a discretionary function
of the Department.  

Statutory
Interpretation

            Commitment
following a not guilty by reason of insanity verdict is a civil matter.  Campbell v. State, 85 S.W.3d 176, 180 (Tex. 2002).  Commitments pursuant to the Mental Health
Code are also civil matters.  See,
e.g., Johnstone, 22
S.W.3d at 409.  But these two types of
commitments are not the same simply because they are both civil in
character.  The two commitment regimes
share components, but as the Texas Supreme Court recognized, only the parts of
the Mental Health Code that are “pertinent” apply to Article 46.03
commitments.  Campbell, 85 S.W.3d at 182.

            In Campbell
the court considered the interplay between
the Mental Health Code and Article 46.03 and concluded that provisions of the
Mental Health Code do not apply to Article 46.03 commitments unless they are
specifically incorporated into Article 46.03 or are otherwise pertinent to
Article 46.03 commitments.  Id. at
182–83.  In that case, two “mental health
certificates” that were a prerequisite under the Mental Health Code to a
commitment hearing were not filed prior to the hearing.  See Tex.
Health & Safety Code Ann. § 574.009 (Vernon 2006); Campbell, 85 S.W.3d at 180. 
The court concluded that although an Article 46.03 commitment hearing
must be “conducted pursuant to the provisions of the Mental Health Code,” the
certificate prerequisite was not specifically or implicitly incorporated into
the Article 46.03 commitment hearing and therefore not required.  Id.  (“Accordingly, we conclude
that only those Mental Health Code provisions pertinent to an article 46.03
section 4(d)(5) proceeding apply.”). 

            I.
Direct Incorporation

            Turning
this analytical lens to section 574.082 (the pass and furlough statute), we
similarly conclude that this statute is not pertinent to or incorporated into
an Article 46.03 commitment.  There are
instances where Article 46.03 specifically incorporates parts of the Mental
Health Code.  For example, the initial
commitment for purposes of Article 46.03 must be conducted according to the
standards and procedure outlined in the Mental Health Code.  See Tex.
Code Crim. Proc. Ann. art. 46.03, § 4(d)(2).  The duration of subsequent commitment orders
is that specified by the relevant Mental Health Code section.  See Tex.
Code Crim. Proc. Ann. art. 46.03, § 4(d)(5) (“Commitment orders
subsequent to an initial commitment order issued under this subsection shall be
of an appropriate duration as specified in the Mental Health Code or the
Mentally Retarded Person’s Act, whichever is applicable.”).  Review and modification of outpatient
commitment orders is completed using the procedures from the Mental Health Code
or the Mentally Retarded Person’s Act.  See
id. 46.03, § 4(d)(4).  However, Article 46.03 does not directly
incorporate the pass and furlough statute.

            II.
Indirect Incorporation

            Whether
the pass and furlough statute is “pertinent” to Article 46.03 is a slightly
different question.  When the Texas
Supreme Court considered pertinence in Campbell, it utilized statutory construction tools,
including examination of the underlying policy considerations, to determine if
the certificate prerequisite was necessarily included in the Article 46.03
recommitment hearing.  Campbell, 85 S.W.3d at 183. 
The court concluded that it was logical not to require two mental health
certificates before initiating a commitment pursuant to Article 46.03 because
an Article 46.03 acquittee has already been “adjudicated violently insane.”  Id.      

            It
is just as logical to conclude that the pass and furlough statute is not
pertinent to an Article 46.03 commitment. 
It is clear that the legislature intended for the judiciary to be
involved in the decision to release an Article 46.03 acquittee.  See Tex.
Code Crim. Proc. Ann. art. 46.03, § 4(d)(5); State v. Roland, 973 S.W.2d 665, 667 (Tex. 1998) (“The Legislature
clearly intended for the judiciary to be involved in the decision to terminate
the commitment of a person found not guilty of a violent offense by reason of
insanity.”).  In Roland, the Texas Supreme Court held that an Article 46.03
acquittee was not entitled to release simply because the annual commitment
hearing had not occurred, basing its ruling in part on the legislative intent
for releases from inpatient treatment to have judicial oversight.  Id.  The result would have been
different if the Mental Health Code applied generally to Article 46.03
acquittees because it requires that the patient be discharged when the court
order expires.  See Tex. Health & Safety Code Ann. §
574.085.  

            A
pass or a furlough allows an Article 46.03 acquittee to leave a facility.  The legislature did not require a judge to
make the discharge decision or the decision to release an acquittee to
outpatient treatment because of a concern about the name given to the mechanism
of release.  Instead, we believe that the
legislature determined that the decision to release an acquittee should be made
by a judge to protect the public and to provide another layer of review to the
Department’s decision making.  In this
context, we conclude that the pass and furlough statute is not indirectly
incorporated into Article 46.03. 

            III.
Statutory Grouping








            The
pass and furlough statute is grouped with other statutes that are plainly not
pertinent to Article 46.03 commitments. 
The pass and furlough statute is found within Subchapter F of Chapter
574 of the Mental Health Code.  Subchapter
F contains provisions for passes and furloughs and for the termination of court
ordered mental health services by the Department.[7]  The termination provisions, the only other
statutes in Subchapter F, clearly do not apply to non–Article 46.03
commitments.  See Roland, 973 S.W.2d at 667. 
The legislative grouping of statutes is not definitive.  See Tex.
Gov’t Code § 311.023 (7) (Vernon 2006). 
However, the fact that the pass and furlough statute is functionally and
textually grouped with other statutes that are not pertinent to Article 46.03
suggests that it is not pertinent to an Article 46.03 commitment.

            IV.
Mental Health Code and Other Commitment Schemes  

            Article
46.03 does not incorporate the Mental Health Code generally.  Other commitment schemes do, including the
commitment schemes for those found to be incompetent prior to trial and those
found not guilty by reason of insanity after September 1, 2005.  At the time of the offense committed by
Appellee, pretrial commitment of those found to be incompetent to stand trial
was provided for by Article 46.02, Texas Code of Criminal Procedure.  Under that article, treatment and release
were specifically to be determined “in conformity with Subtitle C, Title 7,
Health and Safety Code [the Mental Health Code], except as may be provided in
this Article.”  Act of June 18, 1999,
76th Leg., R.S., ch. 561 § 6(b)(7), 1999 Tex. Gen. Laws 3092, 3097, repealed
by Act of May 14, 2003, 78th Leg. R.S., ch. 35, § 15, 2003 Tex. Gen. Laws
57, 72.  Therefore, the Article 46.02
commitment scheme for incompetent persons specifically incorporated all of the
relevant portions of the Mental Health Code that were not specifically
disclaimed.  That kind of incorporating
language is not present in Article 46.03.

            Individuals
committed because they have been found to be incompetent to stand trial are not
permitted passes or furloughs.  See Tex. Health & Safety Code Ann. §
571.011(b).  The parties offer  differing interpretations for section
571.011.  Appellant argues that because
Article 46.03 acquittees were not excepted from the pass and furlough statute,
as were Article 46.02 committees, the pass and furlough statute must be applicable
to Article 46.03 acquittees.  The State
argues that an absurd result obtains if Appellant’s interpretation is accepted
because an incompetent person charged with a misdemeanor could not receive a
pass but a person such as Appellant, who killed two children, would be eligible
for temporary releases.  

            The
impact of Appellant’s argument is theoretically quite substantial.  If the pass and furlough statute applies to
Appellant, the Department would be permitted to give her unlimited passes of up
to seventy-two hours and furloughs of “a longer period.”  See Tex.
Health & Safety Code Ann. § 547.082(b).[8]   However, the fact that Article 46.03
acquittees were not specifically excluded from the pass or furlough statute, as
are incompetent persons, does not mean that Article 46.03 acquittees may be
given passes and furloughs.  Because the
Mental Health Code was incorporated generally into Article 46.02, section
571.011 was necessary if the legislature did not wish for those patients to
receive passes.  A similar exclusion was
not necessary for Article 46.03 acquittees because the Mental Health Code was
not incorporated generally into Article 46.03.

            By
contrast, the new commitment scheme for those found not guilty by reason of
insanity also incorporates the Mental Health Code in a way that Article 46.03
does not.  In 2005, the legislature
replaced Article 46.03 with Article 46C for persons found to be not guilty by
reason of insanity of acts committed after September 1, 2005.  Act of June 17, 2005, 79th Leg., R.S., ch
831, §§ 1, 2, 2005 Tex. Gen. Laws 2854. 
Appellant argues that the new statutes support her argument that she is
eligible for passes and furloughs.  She
argues that Article 46C is merely a recodification of Article 46.03 and we
should conclude that both Article 46C and Article 46.03 allow for passes or furloughs.  

            With
respect to the first point, Article 46C provides that a “person’s status as a
patient or resident” is governed by the Mental Health Code.  See Tex.
Code Crim. Proc. Ann. art. 46C.259 (Vernon 2006).  Reasonable minds may differ as to whether
this means that Article 46C acquittees are eligible for passes and
furloughs.  Even if they are,[9]
we are of the opinion that the conclusion to be drawn with respect to Article
46.03 is the opposite of that urged by Appellant.  Article 46.03 acquittees are governed by the
Mental Health Code only where its provisions were specifically incorporated or
otherwise “pertinent.”  Campbell, 85 S.W.3d at 181–82.  The legislature knew how to incorporate the
Mental Health Code into the Code of Criminal Procedure.  They did so for those found to be incompetent
to stand trial both before 2005 and after, and for persons found not guilty by
reason of insanity for acts committed after September 1, 2005.  Yet the legislature did not incorporate the
Mental Health Code into Article 46.03 generally.

            The
formal legislative history of Article 46C states that the new legislation “rewrites
the insanity defense statute to streamline the process and improve the
post-acquittal procedures. . . .”  See
Senate Jurisprudence Committee, Bill Analysis, Tex. S.B. 837, 79th Leg.
R.S. (2005).  True to the analysis, the
new statutory structure is not simply a renumbering of an older statute.  Many of the features are the same, but the
Article 46C.259 incorporation language is new. 
Even if the incorporation language is a modification of the Campbell
pertinency requirement, a question on
which we express no opinion, the legislature did not add the incorporation
language to Article 46.03 when it enacted Article 46C. 

            Finally,
Appellant asserted at oral argument that a consequence of the trial court’s
ruling that she was ineligible for passes would be that she could receive no
treatment at all for her mental illness. 
Her reasoning was that because passes, furloughs, and treatment are all
provided for by the Mental Health Code, a determination that she was ineligible
for passes would necessarily mean that she was also ineligible for the
treatment provisions of the Mental Health Code.[10]  This argument, however, fails to take into
account the determination in Campbell that the Mental Health Code applies if it is specifically incorporated
or otherwise pertinent.  The trial court
did not rule that the entire Mental Health Code did not apply to Appellant,
only that a single statute within the Mental Health Code that was not
incorporated or pertinent to an Article 46.03 commitment did not apply to
her.  We think it beyond reasonable
dispute that any statutes that relate to or allow the Department to provide
Appellant with counseling, medication, and other treatment would be pertinent
to Appellant’s commitment.

Summary

            The
pass and furlough statute is not specifically incorporated into Article
46.03.  The pass and furlough statute is
in the subchapter of the Mental Health Code that deals with release and
discharge and does not apply to Article 46.03 acquittees.  And unlike several other commitment schemes,
Article 46.03 does not incorporate the Mental Health Code generally.  Therefore, as a matter of statutory
construction, we conclude that the pass and furlough statute is not “pertinent”
to Article 46.03.  Accordingly, we hold
that the pass and furlough statute found in the Mental Health Code does not
apply to Appellant so long as she is committed to inpatient care under Article
46.03.  We overrule Appellant’s first
issue.

 

Constitutional Right to a Pass or Furlough

            In
her third issue, Appellant asserts that she has a constitutional right to
treatment, which includes a right to passes. 
Specifically, she contends she has a substantive due process right to
passes because the professionals treating her determined that she should have
them.  The State does not dispute that a
committed person possesses the right to treatment, but argues that the
Appellant’s due process rights are sufficiently vindicated by periodic review
of her commitment.  

            The
purpose of Appellant’s commitment is to provide her with treatment, as well as
to protect her and society.  See Jones, 463 U.S. at 368, 103 S. Ct. at 3051–52.  As the State argues, periodic review of her
commitment satisfies some due process considerations and, of course, is required
by statute.  See Roland, 973 S.W.2d at 666; Tex. Code Crim. Proc. Ann. art. 46.03, § 4(d)(5).  But the trial court determined that Appellant
was not eligible for passes as a matter of law, not that she should not have
them for some period of time.  Therefore,
periodic review cannot fulfill a right to a pass, if one existed, because that
question will not be reviewed periodically. 


            In
her argument, Appellant relies upon the due course of law provision found in
Article I, Section 19 of the Texas Constitution, but does not argue that it
provides broader due process protection than does the Fourteenth Amendment to
the United States Constitution. 
Accordingly, we will assume that each document contains the same protections.  See Tex. Workers’ Comp. Comm’n
v. Patient Advocates, 136 S.W.3d 643, 658
(Tex. 2004) (“Texas’s due course of law clause and the federal due process
clause are textually different, but we generally construe the due course clause
in the same way as its federal counterpart.”).

            In
a substantive due process analysis, we determine (1) whether the party had a
protected liberty interest, and (2) if the government deprived him or her of
that interest capriciously and arbitrarily. 
See Dallas County v. Gonzales, 183 S.W.3d 94, 111 (Tex. App.–Dallas 2006, no
pet.) (citing Foucha v. Louisiana,
504 U.S. 71, 80, 112 S. Ct. 1780, 118 L. Ed. 2d 437 (1992)).  The 
level of scrutiny depends on the nature of the right involved.  If the right is a “fundamental right,” the
state must show a compelling interest to curtail it and must do so as narrowly
as possible.  See Reno
v. Flores, 507 U.S. 292, 301–02, 113 S.
Ct. 1439, 1447, 123 L. Ed. 2d 1 (1993); Collins v. Harker Heights, 503 U.S. 115, 125, 112 S. Ct. 1061, 1068, 117 L.
Ed. 2d 261 (1992).  If the right is not a
fundamental right, substantive due process merely requires a rational
relationship between the state’s interest and the right being curtailed.  Washington v. Glucksberg, 521 U.S. 702, 722, 117 S. Ct. 2258, 2268, 138 L.
Ed. 2d 772 (1997).  Fundamental rights
are those that are “deeply rooted in this Nation’s history and tradition” and “implicit
in the concept of ordered liberty, such that neither liberty nor justice would
exist if they were sacrificed.”  Id., 521 U.S. at 721, 117 S. Ct. at 2268 (internal
quotations and citations omitted).

            With
respect to civil commitments, the Due Process Clause “requires that the nature
and duration of commitment bear some reasonable relation to the purpose for
which the individual is committed.”  Jones, 463 U.S. at 368, 103 S. Ct. at 3051–52 (quoting Jackson
v. Indiana, 406 U.S. 715 (1972)); see
also Seling v. Young, 531
U.S. 250, 265, 121 S. Ct. 727, 748, 148 L. Ed. 2d 734 (2001) (“Accordingly, due
process requires that the conditions and duration of confinement under the Act
bear some reasonable relation to the purpose for which persons are committed.”).

            Those
acquitted by reason of insanity are a special class and may be treated
differently from those committed under ordinary civil commitment
standards.  Jones, 463 U.S. at 370, 103 S. Ct. at 3053.  Indeed, the Supreme Court has held that with
respect to insanity acquittees, as in other areas “fraught with medical and
scientific uncertainties, legislative options must be especially broad and
courts should be cautious not to rewrite legislation.”  Id.

            This
is an area that is certainly fraught with medical and scientific
uncertainties.  Acquittees situated as
Appellant have been found to have committed the act for which they were
charged.  See Tex. Code Crim. Proc. Ann. art. 46.03, §
1(c).  Furthermore, such persons have
been found to meet the criteria for commitment but have not reached the level
where the person can be released for outpatient treatment.  See id. § 4(d)(3), (4). 
Also, “[t]he state has a substantial interest in avoiding premature
release of insanity acquittees, who have committed acts constituting felonies
and have been declared dangerous to society.” 
Hickey v. Morris, 722
F.2d 543, 548 (9th Cir. 1983). 

            Accordingly,
the states have arrived at various conclusions in their attempt to fashion
remedies for the issues raised by offenses committed by mentally ill or insane
persons that comport with each state’s respective goals, traditions, and
conclusions about these issues, as well as the requirements imposed by their
constitutions and the U.S. Constitution. 
As the Supreme Court noted recently, a “significant number of these
jurisdictions supplement the traditional ‘not guilty by reason of insanity’
verdict with an alternative of ‘guilty but mentally ill.’”  Clark v. Arizona, 126 S. Ct. 2709, 2721, 165 L. Ed. 2d 842
(2006).  While not passing on the
question, the Court also noted that four states provided no affirmative
insanity defense.  Id., 126 S. Ct. at 2721–22.  In that context, the decision not to allow
passes or furloughs to those who meet the standards for commitment and who have
been shown to have committed an offense while insane is within the broad range
of legislative options for dealing with this complicated issue.[11]  Cf. id., 126 S. Ct. at 2722 (“[T]he insanity rule, like
the conceptualization of criminal offenses, is substantially open to state
choice.”).

            Appellant
argues that Youngberg v. Romeo,
457 U.S. 307, 102 S. Ct. 2452, 73 L. Ed. 2d 28 (1982), creates a liberty
interest that can be satisfied only if treatment decisions are made by a
qualified professional and meet an accepted standard of professional
judgment.  Id., 457 U.S. at 319 n.25, 103 S. Ct. at 2459–60
n.25.  She further argues that “whenever
a discrete recommendation for treatment is made by the state’s own
professionals, the court must accept the judgment of these professionals unless
it is a substantial departure from accepted professional judgment.”  This overstates the Supreme Court’s
conclusion in Youngberg.  That case dealt with a mentally retarded
individual who was committed in an ordinary civil commitment.  The Court held that the state had a duty to
provide the committed individual with a safe environment and to facilitate his
ability to function free of bodily restraints. 
Id., 457 U.S. at 324,
2452 S. Ct. at 2463.  This is not a
general right to treatment, nor did Youngberg deal with substantive due process rights.  See id., 457 U.S. at 317 n.19, 103 S. Ct. at 2459 n.19
(Declining to address substantive due process claim.).  Rather, the Court concluded that a right to “minimally
adequate training” may exist where necessary to reduce the need for restraints
or to reduce the likelihood of violence. 
Id., 457 U.S. at 322–24,
103 S. Ct. at 2461–62 (“Respondent thus enjoys constitutionally protected
interests in conditions of reasonable care and safety, reasonably
nonrestrictive confinement conditions, and such training as may be required by
those interests.”).  In a subsequent
opinion, the Court characterized the holding in Youngberg as standing “only for the proposition that when the
State takes a person into its custody and holds him there against his will, the
Constitution imposes upon it a corresponding duty to assume some responsibility
for his safety and general well–being.”  Deshaney
v. Winnebago County Dep’t of Social Services,
489 U.S. 189, 199–200, 109 S. Ct. 998, 1005, 103 L. Ed. 2d 249 (1989).[12]








            Even
if the Youngberg analysis
applied here, Appellant is receiving “minimally adequate training” without
passes or furloughs.  The “minimally
adequate training” required in Youngberg was that training which would allow the committee in that case to be
as free of physical restraints (shackles) as possible.  See Youngberg, 457 U.S. at 310–11 & n.4, 102 S. Ct. at 2455
& n.4.  That right was derivative of
his right to reasonable care.  Appellant
has received, by all accounts, a wide array of high quality services from the
state mental health professionals.  She
is provided with medication and a safe, comfortable place to reside.  Her meals are provided, and she is able to
engage in one on one psychotherapy and to participate in group therapy and
classes related to her treatment. 
Additionally, she is permitted to participate in distance learning
opportunities and has access to the grounds of the facility.  She has earned a high level of freedom on the
campus itself.  She is not confined or
shackled, and she is free to socialize with other committees who also have
access to the grounds.  This stands in
sharp contrast to the committee in Youngberg, a mentally retarded individual who was shackled
for hours at a time and suffered injury and abuse.

            Some
of the professionals treating Appellant testified that the passes were useful
as an assessment tool and to help with her treatment.  The witnesses also testified that Appellant
could continue to be treated without passes. 
The State’s expert witness testified that passes were in the nature of a
luxury and were not necessary to treatment. 
Several witnesses conceded that there were classes of committees for
whom passes were not permitted.[13]  Indeed, it appears that the Department’s own
guidelines were rewritten in response to the passage of Article 46C, and that
the Department’s legal staff made the judgment that Article 46C acquittees for
which there had been a finding of dangerous conduct would not be permitted
passes.  The fact that treatment could be
continued without passes and that the Department decided unilaterally not to
allow passes for certain patients undercuts Appellant’s argument that passes
are necessary to her treatment.  

            The
nature of a commitment need only be reasonably related to the purpose of the
commitment.  Those who are committed
under Article 46.03 are different from ordinary civil committees and, as the
court recognized in Jones,
present different challenges.  Id., 463 U.S. at 370, 103 S. Ct. at 3053.  The legislature’s decision not to allow
passes to Article 46.03 acquittees is reasonably related to the reasons for
commitment, namely to provide treatment and to safeguard the patient and
society.  Additionally, the statutory
scheme provides for less restrictive treatment for Article 46.03 acquittees in
the form of outpatient treatment when they have achieved a level of stability
such that their treatment can be delivered on that basis.  See Tex.
Code Crim. Proc. Ann. art. 46.03, § 4(d)(4).  In balancing the goals of protecting the
acquittee and society and providing treatment, we conclude that the legislative
decision not to permit passes to Article 46.03 acquittees bears a reasonable relation
to the reasons for the commitment.  We
overrule Appellant’s third issue.  

 

Sufficiency of the Evidence

            In
her fourth issue, Appellant asserts that the evidence is legally and factually
insufficient to support the trial court’s order.  Without conceding the issue, Appellant argues
that even if the trial court had the authority to countermand the decision of
the Department to allow her to go on passes, its decision lacked a factual
basis.  The trial court’s ruling was not
a review of the Department’s discretionary decision to allow passes.  The trial court did not make factual
findings, but held as a matter of law that passes were not available for those
committed pursuant to Article 46.03, Texas Code of Criminal Procedure.  Therefore, there are no factual
determinations to review.  We overrule
Appellant’s fourth issue.

Conclusion

            As
a matter of first impression, we hold that those persons committed under
Article 46.03, Texas Code of Criminal Procedure, are not permitted passes or
furloughs by the Mental Health Code. 
Article 46.03 does not explicitly or implicitly incorporate the pass and
furlough statute found in the Mental Health Code.  Therefore, that statute does not apply to an
Article 46.03 commitment.  Appellant does
not possess a substantive due process right to a pass or furlough because there
is a reasonable relationship between the purpose of her commitment, to
safeguard her and the public and to provide treatment for her mental illness,
and the legislative decision not to allow passes to Article 46.03 acquittees committed
to inpatient treatment.  We affirm the trial court’s order.

 

            

                                                                                                     JAMES T. WORTHEN    

                                                                                                                 Chief Justice

Opinion
delivered April 11, 2007.

Panel consisted of Worthen, C.J., Griffith, J., and Hoyle,
J.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

(PUBLISH)

 

 

 

 

 

 

            

 




APPENDIX

 

Art
46.03.  Insanity defense

The
Insanity Defense

Sec. 1. (a) The
insanity defense provided in Section 8.01 of the Penal Code shall be submitted
to the jury only if supported by competent evidence.

(b) When the insanity defense is submitted, the
trier of facts shall determine and include in the verdict or judgment or both
whether the defendant is guilty, not guilty, or not guilty by reason of
insanity.

            (c) The trier of facts shall return a
verdict of not guilty by reason of insanity if the prosecution has established
beyond a reasonable doubt that the alleged conduct was committed and the
defense has established by a preponderance of the evidence that the defendant
was insane at the time of the alleged conduct.

            (d) A defendant who has been found
not guilty by reason of insanity shall stand acquitted of the offense charged
and may not be considered a person charged with a criminal offense.

            (e) The court, the attorney for the
state, or the attorney for the defendant may not inform a juror or a
prospective juror of the consequences to the defendant if a verdict of not
guilty by reason of insanity is returned.

Raising
the Insanity Defense

Sec. 2. (a) A
defendant planning to offer evidence of the insanity defense shall file a
notice of his intention to offer such evidence with the court and the
prosecuting attorney:

                        (1)
at least 10 days prior to the date the case is set for trial; or

                        (2)
if the court sets a pretrial hearing before the 10-day period, the defendant
shall give notice at the hearing; or

(3) if the defendant raises the issue of his
incompetency to stand trial before the 10-day period, he shall at the same time
file notice of his intention to offer evidence of the insanity defense.

            (b) Unless notice is timely filed
pursuant to Subsection (a) of this section, evidence on the insanity defense is
not admissible unless the court finds that good cause exists for failure to
give notice.

Examination
of the Defendant

Sec. 3. (a) If
notice of intention to raise the insanity defense is filed under Section 2 of
this article, the court may, on its own motion or motion by the defendant, his
counsel, or the prosecuting attorney, appoint disinterested experts experienced
and qualified in mental health and mental retardation to examine the defendant
with regard to the insanity defense and to testify thereto at any trial or
hearing on this issue.

(b) The court may order any defendant to submit to
examination for the purposes described in this article. If the defendant is
free on bail, the court in its discretion may order him to submit to
examination. If the defendant fails or refuses to submit to examination, the
court may order him to custody for examination for a reasonable period not to
exceed 21 days. The court may not order a defendant to a facility operated by
the Texas Department of Mental Health and Mental Retardation for examination
without the consent of the head of that facility or for a period exceeding 21
days. If a defendant who has been ordered to a facility operated by the Texas
Department of Mental Health and Mental Retardation for examination remains in
such facility for a period of time exceeding 21 days, the head of that facility
shall cause the defendant to be immediately transported to the committing court
and placed in the custody of the sheriff of the county in which the committing
court is located. That county shall reimburse the Texas Department of Mental
Health and Mental Retardation facility for the mileage and per diem expenses of
the personnel required to transport the defendant calculated in accordance with
the state travel regulations in effect at that time.

(c) The court shall advise any expert appointed
pursuant to this section of the facts and circumstances of the offense with
which the defendant is charged and the elements of the insanity defense.

 (d) A written
report of the examination shall be submitted to the court within 30 days of the
order of examination, and the court shall furnish copies of the report to the
defense counsel and the prosecuting attorney. The report shall include a
description of the procedures used in the examination and the examiner's
observations and findings pertaining to the insanity defense. The examiner
shall also submit a separate report setting forth his observations and findings
concerning:

(1) whether the defendant is presently mentally ill
and requires court-ordered mental health services; or

(2) whether the defendant is a mentally retarded
person as defined in the Mentally Retarded Persons Act of 1977 (Article
5547-300, Vernon's Texas Civil Statutes).

(e) The appointed experts shall be paid by the
county in which the indictment was returned or information was filed. A
facility operated by the Texas Department of Mental Health and Mental
Retardation which accepts a defendant for examination under Subsection (a) of
this section shall be reimbursed by the county in which the indictment was
returned or information was filed for such expenses incurred as are determined
by the department to be reasonably necessary and incidental to the proper
examination of the defendant.

(f) When a defendant wishes to be examined by a
psychiatrist or other expert of his own choice, the court on timely request
shall provide the examiner with reasonable opportunity to examine the
defendant.

NOTICE:
FIRST OF TWO VERSIONS OF SUBD. 3(g)

Effective
until January 1, 2004

(g) The experts appointed under this section to
examine the defendant with regard to the insanity defense also may be appointed
by the court to examine the defendant with regard to his competency to stand
trial pursuant to Section 3 of Article 46.02 of this code, provided that
separate written reports concerning the defendant's competency to stand trial
and the insanity defense shall be filed with the court.

 

NOTICE:
SECOND OF TWO VERSIONS OF SUBD. 3(g)

Effective
January 1, 2004

(g) The experts appointed under this section to
examine the defendant with regard to the insanity defense also may be appointed
by the court to examine the defendant with regard to his competency to stand
trial pursuant to Chapter 46B, provided that separate written reports
concerning the defendant's competency to stand trial and the insanity defense
shall be filed with the court.

Disposition
Following Acquittal by Reason of Insanity

Sec. 4. (a) Act
Did Not Involve Serious Bodily Injury; Civil Commitment. If a defendant is
found not guilty by reason of insanity in the trial of a criminal offense, the
court shall determine whether the conduct committed by the defendant involved
an act, attempt, or threat of serious bodily injury to another person. If the
court determines that the defendant had not committed an act, attempt, or
threat of serious bodily injury to another person, then the court shall further
determine whether there is evidence to support findings that the defendant is
either mentally ill or is a mentally retarded person. If the court determines
that there is evidence to support either of such findings, the court shall
transfer the defendant to the appropriate court for civil commitment
proceedings and may order the defendant detained in jail or other suitable
place pending the prompt initiation and prosecution by the attorney for the
state or other person designated by the court of appropriate civil proceedings
to determine whether the defendant shall be committed to a mental health or
mental retardation facility; provided, however, that a patient placed in a
facility of the Texas Department of Mental Health and Mental Retardation
pending civil hearing under this section shall only be detained pursuant to the
provisions for an Order of Protective Custody as set out in the Texas Mental
Health Code and with the consent of the head of the facility, or the court may
give the defendant into the care of a responsible person on satisfactory
security being given for his proper care and protection; otherwise, the
defendant shall be discharged.

            (b) Commitment to Maximum Security
Unit; Transfer to Nonsecurity Unit. A person committed to a mental health or
mental retardation facility as a result of the proceedings initiated pursuant
to Subsection (d) of this section shall be committed to the maximum security
unit of any facility designated by the Texas Department of Mental Health and
Mental Retardation. Within 60 days following arrival at the maximum security
unit, the person shall be transferred to a nonsecurity unit of a mental health
or mental retardation facility designated by the Texas Department of Mental
Health and Mental Retardation unless the person is determined to be manifestly
dangerous by a review board within the Texas Department of Mental Health and
Mental Retardation. The Commissioner of Mental Health and Mental Retardation
shall appoint a review board of five members, including one psychiatrist
licensed to practice medicine in this state and two persons who work directly
with mental health patients or mentally retarded clients, to determine whether
the person is manifestly dangerous. If the superintendent of the facility at
which the maximum security unit is located disagrees with the determination,
then the matter will be referred to the Commissioner of Mental Health and
Mental Retardation who will resolve the disagreement by deciding whether the
person is manifestly dangerous.

(c) Transcript of all Medical Testimony. The court
shall order that a transcript of all medical testimony received in both the
criminal proceedings and the commitment proceedings be prepared forthwith by
the court reporters and that such transcripts, together with a statement of the
facts and circumstances surrounding the alleged offense, shall accompany the
patient to the mental health or mental retardation facility.

(d) Act, Attempt, or Threat of Serious Bodily
Injury; Special Commitment; Out-patient Supervision; Recommitment. 

(1) Civil Commitment or Automatic Commitment for
Evaluation. If a defendant is found not guilty by reason of insanity in the
trial of a criminal offense and the court determines that the defendant
committed an act, attempt, or threat of serious bodily injury to another
person, the trial court may transfer the defendant to the appropriate court for
civil commitment proceedings on receipt of that court's written consent to the
transfer or may retain jurisdiction over the defendant as provided by this
subdivision. A trial court that transfers a defendant to the appropriate court
for civil commitment proceedings shall order the defendant detained in jail or
other suitable place pending the initiation of appropriate civil proceedings. A
trial court that does not transfer a defendant to the appropriate court for
civil commitment proceedings under this subdivision shall retain jurisdiction
over the defendant and shall proceed as provided by this subsection. The court
shall order the defendant to be committed to the maximum security unit of any
facility designated by the Texas Department of Mental Health and Mental
Retardation until such time as the defendant is eligible for release pursuant
to this subsection or is eligible for transfer to a nonsecurity facility
pursuant to Subsection (b) of this section. The court shall order that an
examination of the defendant's present mental condition be conducted and that a
report be filed with the court.

(2) Hearing. A hearing shall take place not later
than 30 days following the acquittal order to determine if the person acquitted
by reason of insanity is presently mentally ill or mentally retarded and meets
the criteria for involuntary commitment as provided in the Texas Mental Health
Code (Article 5547-1 et seq., Vernon's Texas Civil Statutes) or the Mentally
Retarded Person's Act (Article 5547-300, Vernon's Texas Civil Statutes). The
hearing shall be conducted by the trial court in the same manner as a hearing
on an application for involuntary commitment pursuant to the Mental Health Code
or the Mentally Retarded Person's Act.

(3) Determination and Disposition. If, after the
hearing, the court finds that the acquitted person meets the criteria for
involuntary commitment, the court shall order that person to be committed to a
mental hospital or other appropriate facility, as designated by the Texas
Department of Mental Health and Mental Retardation, for a period not exceeding
90 days. The court may order the acquitted person to participate in a
prescribed regimen of medical, psychiatric, or psychological care or treatment
on an out-patient basis pursuant to the provisions of Subdivision (4) of this
subsection. If the court finds that the person acquitted by reason of insanity
does not meet the criteria for involuntary commitment, the court shall order
that person's immediate release.

(4) Out-patient Supervision. If at the time of the
evaluation as provided in Subdivision (1) of this subsection prior to the
hearing on involuntary commitment, the report of the defendant's present mental
condition includes a recommendation that the person acquitted by reason of
insanity meets the criteria for involuntary commitment but that such treatment
or care can be provided on an out-patient basis provided he participates in a
prescribed regimen of medical, psychiatric, or psychological care or treatment,
and the court finds that the acquitted person does meet those criteria, the
court may order the acquitted person to participate in that prescribed regimen
of medical, psychiatric, or psychological care or treatment. The court may at
any time modify or revoke the out-patient regimen of medical, psychiatric, or
psychological care or treatment pursuant to the requirements of the Mental
Health Code or the Mentally Retarded Person's Act. The court shall review the
continuing need for such order at the completion of 90 days from the issuance
of the initial out-patient order and no less often than once every 12 months
for subsequent out-patient orders pursuant to the requirements of the Mental
Health Code or Mentally Retarded Person's Act.

(5) Judicial Release. A person acquitted by reason
of insanity and committed to a mental hospital or other appropriate facility
pursuant to Subdivision (3) of this subsection may only be discharged by order
of the committing court in accordance with the procedures specified in this
subsection. If at any time prior to the expiration of a commitment order the
superintendent of the facility to which the acquitted person is committed
determines that the person has recovered from his mental condition to such an
extent that he no longer meets the criteria for involuntary commitment or that
he continues to meet those criteria but that treatment or care can be provided
on an out-patient basis provided he participates in a prescribed regimen of
medical, psychiatric, or psychological care and treatment, the director of the
facility shall promptly file a certificate to that effect with the clerk of the
court that ordered the commitment. If the superintendent of the facility
intends to recommend release, out-patient care, or continued in-patient care
upon the expiration of a commitment order, the superintendent shall file a
certificate to that effect with the clerk of the court that ordered the
commitment at least 14 days prior to the expiration of that order. The clerk
shall notify the district or county attorney upon receipt of such certificate.
Upon receipt of such certificate or upon the expiration of a commitment order,
the court shall order the discharge of the acquitted person or on the motion of
the district or county attorney or on its own motion shall hold a hearing,
prior to the expiration of the commitment order, conducted pursuant to the
provisions of the Mental Health Code or the Mentally Retarded Person's Act as
appropriate, to determine if the acquitted person continues to meet the
criteria for involuntary commitment and whether an order should be issued
requiring the person to participate in a prescribed regimen of medical,
psychiatric, or psychological care or treatment on an out-patient basis as
provided in Subdivision (4) of this subsection. If the court determines that
the acquitted person continues to meet the criteria for involuntary commitment
and that out-patient supervision is not appropriate, the court shall order that
the person be returned to a mental hospital or other appropriate in-patient or
residential facility. If the court finds that continued in-patient or
residential care is required, the commitment will continue until the expiration
of the original order, if one is still in effect, or the court shall issue a
new commitment order of an appropriate duration as specified in the Mental
Health Code or the Mentally Retarded Person's Act. If a hearing on a request
for discharge or out-patient supervision has been held prior to the expiration
of a commitment order, the court is not required to act on a subsequent request
except upon the expiration of a commitment order or upon the expiration of 90
days following a hearing on a previous request. Commitment orders subsequent to
an initial commitment order issued under this subsection shall be of an
appropriate duration as specified in the Mental Health Code or the Mentally
Retarded Person's Act, whichever is applicable.

(6) Modification or Revocation of Out-patient
Supervision. The director of the facility or other individual responsible for
administering a regimen of out-patient care or treatment imposed on an
acquitted person pursuant to Subdivision (4) or (5) of this subsection shall
notify the court ordering such out-patient care of any failure of the person to
comply with that regimen or if the person's condition has so deteriorated that
out-patient care is no longer appropriate. Upon such notice or upon other
probable cause to believe that the person has failed to comply with the
prescribed regimen of medical, psychiatric, or psychological care or treatment,
the person may be taken into custody and brought without unnecessary delay
before the court having jurisdiction over him. The court shall determine, after
a hearing, whether the person should be remanded to a suitable facility for
protective custody, pursuant to the provisions of the Mental Health Code or the
Mentally Retarded Person's Act, pending a hearing on whether the person
continues to meet the criteria for involuntary commitment and whether the
out-patient order should be modified or revoked.

(7) In no event may a person acquitted by reason of
insanity be committed to a mental hospital or other in-patient or residential
facility pursuant to this subsection for a cumulative period of time which
exceeds the maximum term provided by law for the crime for which the acquitted
person was tried. Upon expiration of that maximum term, the acquitted person
may be further confined in such a facility only pursuant to civil commitment
proceedings.

 











[1] The July 2006 order was not in the
appellate record, but we requested and obtained a copy of it.  See
Tex. R. App. P. 34.5(c)(1).  At
oral argument the parties agreed that the trial court recommitted Appellant in
2006.





[2] The Health and Safety Code gives the Department the authority to
release some patients on passes or furloughs. 
See Tex. Health &
Safety Code Ann. § 547.082 (Vernon 2006) (reprinted below).

  

Section 547.082  Pass
or Furlough From Inpatient Care

                

(a)       The facility administrator may permit a patient admitted to the
facility under an order for temporary or extended inpatient mental health
services to leave the facility under a pass or furlough.

(b)       A pass authorizes the patient to leave the facility for not
more than 72 hours. A furlough authorizes the patient to leave for a longer
period.

(c)       The pass or furlough may be subject to specified conditions.

(d)       When a patient is furloughed, the facility administrator shall
notify the court that issued the commitment order.





[3] With its brief, the State included
appendices that contain images and a transcript of testimony, all of which the
State submits came from the record of the underlying criminal trial held in
this matter.  Appellant filed a motion to
strike the appendices, and the State responded. 
We do not doubt the State’s assertion of the documents’ provenance, and
we recognize that the trial court took judicial notice of the criminal
trial.  But these documents are not part
of the appellate record, and the State never requested that they be made a part
of the appellate record.  The appellate
record may be supplemented by this court, the trial court, or any party by a
request to the official court reporter.  Tex. R. App. P. 34.6(d).  Appendices may be filed with briefs and may
contain portions of the record.  Tex. R. App. P. 38.2(j)(2).  However, we do not interpret this rule to
allow a party to supplement the record by including documents in an appendix absent
an agreement of the parties.  See Gilmer Indep. Sch. Dist. v. Dorfman, 156 S.W.3d 586, 588 (Tex. App.–Tyler
2003, no pet.); Yarbrough v. State, 57 S.W.3d 611, 616 (Tex. App.–Texarkana
2001, pet. ref'’d).  Therefore, we grant
Appellant’s motion to strike the appendices and do not consider them.





[4] For the sake of brevity, we refer to a person who has been found not
guilty by reason of insanity and subsequently committed by the procedure found
at article 46.03, Texas Code of Criminal Procedure, as an “Article 46.03
acquittee.”  We will refer to the
commitment procedure generally as an “Article 46.03 commitment.”  Article 46.03 was repealed for prospective
application in 2005.  Act of September 1,
2005, 79th Leg., R.S., ch. 831, §§ 1, 5, 2005 Tex. Gen. Laws 2841, 2841,
2854.  Article 46.03 is continued in
effect for this case, and we have reprinted it in the appendix to this
opinion.  Our citations are to Article
46.03 as it appears in the appendix rather than to the session laws.





[5] Sections 571.001 through 578.008, Texas Health and Safety Code, are
designated as the Texas Mental Health Code. 
See Tex. Health &
Safety Code Ann. § 571.001 (Vernon 2006); Campbell, 85 S.W.3d at 177 n.1. 
In this opinion we refer to these sections as the Mental Health
Code, but cite to the current version of the Health and Safety Code.





[6] The Department has written rules allowing patients to leave the
facility on what is called “absence for trial placement.”  See 25 Tex. Admin. Code  §
412.206 (West 2006).  According to the
administrative rules, an absence for trial placement is a “type of furlough”
and is only available for patients who are eligible for discharge.  25 Tex.
Admin. Code  §§ 412.153(2),
412.206 (West 2006).  Appellant was not
eligible for discharge at the time of the passes because she had recently been
committed for a twelve month period. 
Therefore, she was not eligible for an absence for trial placement.  See also 25 Tex. Admin. Code  § 412.202(f)(2)
(“A person acquitted by reason of insanity and committed to a [State Mental
Health Facility] under TCCP, Article 46.03, may be discharged only upon order
of the committing court in accordance with TCCP, Article 46.03, § 4(d)(5).”).  





[7] Subchapter F is titled “Furlough, Discharge, and Termination of Court–Ordered
Mental Health Services.”





[8] A furlough would require notice to
the committing court, but there is no specific mechanism for the committing
court to review that decision.   In fact,
the statutory scheme appears to frustrate judicial review of a decision to
terminate a furlough.  Section
574.084(a), Texas Health and Safety Code, states that a furlough may be revoked
only after an administrative hearing and within seventy-two hours of the
patient’s being returned to the facility.





[9] To further confound the issue, the Department’s attorney testified that
the Department had decided not to allow passes or furloughs to persons
committed under Article 46C if there was a finding of dangerous conduct.  See Tex.
Code Crim. Proc. Ann. art. 46C.157. 
The attorney testified that there was no statutory basis for this
decision, but that it was part of his responsibility to “advise the facilities
on a whole range of issues that aren’t fleshed out by the statutes.”





[10] Appellant also argues in her brief that the trial court’s order would
mean that she could not be treated for a medical emergency if she could not
receive care on the grounds of the hospital. 
After review of the record, we are not persuaded that the Department
would deny her care in the event of a medical emergency.  The trial court’s order 

does not restrict Appellant to her quarters; it simply
states that the statutory provision allowing for passes does not apply to
Appellant.





[11] The scheme in Texas is less restrictive than is constitutionally
required.  For example, an Article 46.03
commitment allows for treatment to be provided on an outpatient basis, a
feature that does not appear to be

Footnote
continued.

 

constitutionally mandated. 
Additionally, an Article 46.03 commitment can last only as long as the
maximum sentence allowable for the charged offense.  Tex.
Code Crim. Proc. Ann. art. 46.03, § 4(d)(7).  This is not a requirement imposed by the U.S.
Constitution.  See Jones, 463 U.S. at 369–70, 103 S. Ct. at 3052–53. 





[12] In C.J. v. Dep’t of Human Servs., 771 N.E.2d 539 (Ill. App. Ct.
2002), cited by Appellant, an intermediate court of appeals in Illinois held
that Youngberg meant the hospital could not impose
a blanket condition that NGRI acquittees be denied access to the grounds of the
facility.  But it is important to
recognize that C.J.

Footnote
continued.

 

involved the question of whether the hospital employees
were making proper treatment decisions, a procedural due process question.  The range of acceptable choices made by a
legislature is different.  The
legislature may consider all aspects of an issue including their perceptions of
professional conclusions, but also factor in the safety of the community, the
patient, and other reasonable concerns.  See
also Knight v. Mills, 836 F.2d 659, 667–68 (1st Cir.
1987); but see Texas Dep’t of
Mental Health & Mental Retardation v. Petty, 848 S.W.2d 680, 684 n.6 (Tex.
1992) (Plurality decision characterizing Youngberg
as holding that
institutionalized patients possessed constitutional right to adequate treatment.).






[13] The director of the facility testified that she had a chart prepared by
counsel that told her which type of committees were permitted passes and which
were not.